UNITED STATES *v.* DAVIS ET UX.

No. 282.   Argued January 12, 1970—Decided March 23, 1970

*Solicitor General Griswold* argued the cause for the United States. With him on the brief were *Assistant Attorney General Walters, Matthew J. Zinn,* and *William L. Goldman.*

*William Waller* argued the cause for respondents. With him on the brief was *Robert G. McCullough.*

MR. JUSTICE MARSHALL delivered the opinion of the Court.

In 1945, taxpayer [1] and E. B. Bradley organized a corporation. In exchange for property transferred to the new company, Bradley received 500 shares of common stock, and taxpayer and his wife similarly each received 250 such shares. Shortly thereafter, taxpayer made an additional contribution to the corporation, purchasing 1,000 shares of preferred stock at a par value of $25 per share.

The purpose of this latter transaction was to increase the company's working capital and thereby to qualify for a loan previously negotiated through the Reconstruction Finance Corporation. It was understood that the corporation would redeem the preferred stock when

---

[1] References in this opinion to "taxpayer" are to Maclin P. Davis. His wife is a party solely because joint returns were filed for the year in question.

the RFC loan had been repaid. Although in the interim taxpayer bought Bradley's 500 shares and divided them between his son and daughter, the total capitalization of the company remained the same until 1963. That year, after the loan was fully repaid and in accordance with the original understanding, the company redeemed taxpayer's preferred stock.

In his 1963 personal income tax return taxpayer did not report the $25,000 received by him upon the redemption of his preferred stock as income. Rather, taxpayer considered the redemption as a sale of his preferred stock to the company—a capital gains transaction under § 302 of the Internal Revenue Code of 1954 resulting in no tax since taxpayer's basis in the stock equaled the amount he received for it. The Commissioner of Internal Revenue, however, did not approve this tax treatment. According to the Commissioner, the redemption of taxpayer's stock was essentially equivalent to a dividend and was thus taxable as ordinary income under §§ 301 and 316 of the Code. Taxpayer paid the resulting deficiency and brought this suit for a refund. The District Court ruled in his favor, 274 F. Supp. 466 (D. C. M. D. Tenn. 1967), and on appeal the Court of Appeals affirmed. 408 F. 2d 1139 (C. A. 6th Cir. 1969).

The Court of Appeals held that the $25,000 received by taxpayer was "not essentially equivalent to a dividend" within the meaning of that phrase in § 302 (b)(1) of the Code because the redemption was the final step in a course of action that had a legitimate business (as opposed to a tax avoidance) purpose. That holding represents only one of a variety of treatments accorded similar transactions under § 302 (b)(1) in the circuit courts of appeals.[2] We granted certiorari, 396 U. S. 815 (1969),

---

[2] Only the Second Circuit has unequivocally adopted the Commissioner's view and held irrelevant the motivation of the redemption. See *Levin* v. *Commissioner*, 385 F. 2d 521 (1967); *Hasbrook*

in order to resolve this recurring tax question involving stock redemptions by closely held corporations. We reverse.

I

The Internal Revenue Code of 1954 provides generally in §§ 301 and 316 for the tax treatment of distributions by a corporation to its shareholders; under those provisions, a distribution is includable in a taxpayer's gross income as a dividend out of earnings and profits to the extent such earnings exist.[3]   There are exceptions to the application of these general provisions, however, and among them are those found in § 302 involving certain distributions for redeemed stock.   The basic question in this case is whether the $25,000 distribution by the corporation to taxpayer falls under that section—more specifically, whether its legitimate business motivation qualifies the distribution under § 302 (b) (1) of the Code.

v. *United States,* 343 F. 2d 811 (1965).   The First Circuit, however, seems almost to have come to that conclusion, too.   Compare *Wiseman* v. *United States,* 371 F. 2d 816 (1967), with *Bradbury* v. *Commissioner,* 298 F. 2d 111 (1962).

The other courts of appeals that have passed on the question are apparently willing to give at least some weight under § 302 (b) (1) to the business motivation of a distribution and redemption.   See, *e. g., Commissioner* v. *Berenbaum,* 369 F. 2d 337 (C. A. 10th Cir. 1966); *Kerr* v. *Commissioner,* 326 F. 2d 225 (C. A. 9th Cir. 1964); *Ballenger* v. *United States,* 301 F. 2d 192 (C. A. 4th Cir. 1962); *Heman* v. *Commissioner,* 283 F. 2d 227 (C. A. 8th Cir. 1960); *United States* v. *Fewell,* 255 F. 2d 496 (C. A. 5th Cir. 1958).   See also *Neff* v. *United States,* 157 Ct. Cl. 322, 305 F. 2d 455 (1962). Even among those courts that consider business purpose, however, it is generally required that the business purpose be related, not to the issuance of the stock, but to the. redemption of it.   See *Commissioner* v. *Berenbaum, supra; Ballenger* v. *United States, supra.*

[3] See, *e. g., Commissioner* v. *Gordon,* 391 U. S. 83, 88–89 (1968). Taxpayer makes no contention that the corporation did not have $25,000 in accumulated earnings and profits.

Preliminarily, however, we must consider the relationship between § 302 (b)(1) and the rules regarding the attribution of stock ownership found in § 318 (a) of the Code.

Under subsection (a) of § 302, a distribution is treated as "payment in exchange for the stock," thus qualifying for capital gains rather than ordinary income treatment, if the conditions contained in any one of the four paragraphs of subsection (b) are met. In addition to paragraph (1)'s "not essentially equivalent to a dividend" test, capital gains treatment is available where (2) the taxpayer's voting strength is substantially diminished, (3) his interest in the company is completely terminated, or (4) certain railroad stock is redeemed. Paragraph (4) is not involved here, and taxpayer admits that paragraphs (2) and (3) do not apply. Moreover, taxpayer agrees that for the purposes of §§ 302 (b)(2) and (3) the attribution rules of § 318 (a) apply and he is considered to own the 750 outstanding shares of common stock held by his wife and children in addition to the 250 shares in his own name.[4]

Taxpayer, however, argues that the attribution rules do not apply in considering whether a distribution is essentially equivalent to a dividend under § 302 (b)(1).

---

[4] Section 318 (a) provides in relevant part as follows:

"General rule.—For purposes of those provisions of this subchapter to which the rules contained in this section are expressly made applicable—

"(1) Members of family.—

"(A) In general.—An individual shall be considered as owning the stock owned, directly or indirectly, by or for—

"(i) his spouse (other than a spouse who is legally separated from the individual under a decree of divorce or separate maintenance), and

"(ii) his children, grandchildren, and parents."

In § 318 (b) the rules contained in subsection (a) are made specifically applicable to "section 302 (relating to redemption of stock)."

According to taxpayer, he should thus be considered
to own only 25 percent of the corporation's common
stock, and the distribution would then qualify under
§ 302 (b)(1) since it was not pro rata or proportionate
to his stock interest, the fundamental test of dividend
equivalency.  See Treas. Reg. 1.302–2 (b).  However,
the plain language of the statute compels rejection of
the argument.  In subsection (c) of § 302, the attribu-
tion rules are made specifically applicable "in determining
the ownership of stock for purposes of this section."
Applying this language, both courts below held that
§ 318 (a) applies to all of § 302, including § 302 (b)(1)—
a view in accord with the decisions of the other courts of
appeals,[5] a longstanding treasury regulation,[6] and the
opinion of the leading commentators.[7]

Against this weight of authority, taxpayer argues that
the result under paragraph (1) should be different be-
cause there is no explicit reference to stock ownership
as there is in paragraphs (2) and (3).  Neither that fact,
however, nor the purpose and history of § 302 (b)(1)
support taxpayer's argument.  The attribution rules—
designed to provide a clear answer to what would other-
wise be a difficult tax question—formed part of the tax
bill that was subsequently enacted as the 1954 Code.
As is discussed further, *infra,* the bill as passed by the
House of Representatives contained no provision com-
parable to § 302 (b)(1).  When that provision was added
in the Senate, no purpose was evidenced to restrict the
applicability of § 318 (a).  Rather, the attribution rules

---

[5] See *Levin* v. *Commissioner,* 385 F. 2d 521, 526–527 (C. A. 2d
Cir. 1967); *Commissioner* v. *Berenbaum,* 369 F. 2d 337, 342 (C. A.
10th Cir. 1966); *Ballenger* v. *United States,* 301 F. 2d 192, 199
(C. A. 4th Cir. 1962); *Bradbury* v. *Commissioner,* 298 F. 2d 111,
116–117 (C. A. 1st Cir. 1962).

[6] See Treas. Reg. 1.302–2 (b).

[7] See B. Bittker & J. Eustice, Federal Income Taxation of Cor-
porations and Shareholders 292 n. 32 (2d ed. 1966).

continued to be made specifically applicable to the entire section, and we believe that Congress intended that they be taken into account wherever ownership of stock was relevant.

Indeed, it was necessary that the attribution rules apply to § 302 (b)(1) unless they were to be effectively eliminated from consideration with regard to §§ 302 (b)(2) and (3) also. For if a transaction failed to qualify under one of those sections solely because of the attribution rules, it would according to taxpayer's argument nonetheless qualify under § 302 (b)(1). We cannot agree that Congress intended so to nullify its explicit directive. We conclude, therefore, that the attribution rules of § 318 (a) do apply; and, for the purposes of deciding whether a distribution is "not essentially equivalent to a dividend" under § 302 (b)(1), taxpayer must be deemed the owner of all 1,000 shares of the company's common stock.

## II

After application of the stock ownership attribution rules, this case viewed most simply involves a sole stockholder who causes part of his shares to be redeemed by the corporation. We conclude that such a redemption is always "essentially equivalent to a dividend" within the meaning of that phrase in § 302 (b)(1) [8] and therefore do not reach the Government's alternative argument that in any event the distribution should not on the facts of this case qualify for capital gains treatment.[9]

---

[8] Of course, this just means that a distribution in redemption to a sole shareholder will be treated under the general provisions of § 301, and it will only be taxed as a dividend under § 316 to the extent that there are earnings and profits.

[9] The Government argues that even if business purpose were relevant under § 302 (b)(1), the business purpose present here related only to the original investment and not at all to the necessity

The predecessor of § 302 (b)(1) came into the tax law as § 201 (d) of the Revenue Act of 1921, 42 Stat. 228:

"A stock dividend shall not be subject to tax but if after the distribution of any such dividend the corporation proceeds to cancel or redeem its stock at such time and in such manner as to make the distribution and cancellation or redemption essentially equivalent to the distribution of a taxable dividend, the amount received in redemption or cancellation of the stock shall be treated as a taxable dividend . . . ."

Enacted in response to this Court's decision that pro rata stock dividends do not constitute taxable income, *Eisner* v. *Macomber,* 252 U. S. 189 (1920), the provision had the obvious purpose of preventing a corporation from avoiding dividend tax treatment by distributing earnings to its shareholders in two transactions—a pro rata stock dividend followed by a pro rata redemption—that would have the same economic consequences as a simple dividend. Congress, however, soon recognized that even without a prior stock dividend essentially the same result could be effected whereby any corporation, "especially one which has only a few stockholders, might be able to make a distribution to its stockholders which would have the same effect as a taxable dividend." H. R. Rep. No. 1, 69th Cong., 1st Sess., 5. In order to cover this situation, the law was amended to apply "(whether or not such stock was issued as a stock dividend)" whenever a distribution in redemption of stock was made "at such time and in such manner" that it was essentially equiv-

---

for redemption. See cases cited, n. 2, *supra.* Under either view, taxpayer does not lose his basis in the preferred stock. Under Treas. Reg. 1.302–2 (c) that basis is applied to taxpayer's common stock.

alent to a taxable dividend. Revenue Act of 1926, § 201 (g), 44 Stat. 11.

This provision of the 1926 Act was carried forward in each subsequent revenue act and finally became § 115 (g)(1) of the Internal Revenue Code of 1939. Unfortunately, however, the policies encompassed within the general language of § 115 (g)(1) and its predecessors were not clear, and there resulted much confusion in the tax law. At first, courts assumed that the provision was aimed at tax avoidance schemes and sought only to determine whether such a scheme existed. See, *e. g., Commissioner* v. *Quackenbos,* 78 F. 2d 156 (C. A. 2d Cir. 1935). Although later the emphasis changed and the focus was more on the effect of the distribution, many courts continued to find that distributions otherwise like a dividend were not "essentially equivalent" if, for example, they were motivated by a sufficiently strong nontax business purpose. See cases cited n. 2, *supra.* There was general disagreement, however, about what would qualify as such a purpose, and the result was a case-by-case determination with each case decided "on the basis of the particular facts of the transaction in question." *Bains* v. *United States,* 153 Ct. Cl. 599, 603, 289 F. 2d 644, 646 (1961).

By the time of the general revision resulting in the Internal Revenue Code of 1954, the draftsmen were faced with what has aptly been described as "the morass created by the decisions." *Ballenger* v. *United States,* 301 F. 2d 192, 196 (C. A. 4th Cir. 1962). In an effort to eliminate "the considerable confusion which exists in this area" and thereby to facilitate tax planning, H. R. Rep. No. 1337, 83d Cong., 2d Sess., 35, the authors of the new Code sought to provide objective tests to govern the tax consequences of stock redemptions. Thus, the tax bill passed by the House of Representa-

tives contained no "essentially equivalent" language. Rather, it provided for "safe harbors" where capital gains treatment would be accorded to corporate redemptions that met the conditions now found in §§ 302 (b)(2) and (3) of the Code.

It was in the Senate Finance Committee's consideration of the tax bill that § 302 (b)(1) was added, and Congress thereby provided that capital gains treatment should be available "if the redemption is not essentially equivalent to a dividend." Taxpayer argues that the purpose was to continue "existing law," and there is support in the legislative history that § 302 (b)(1) reverted "in part" or "in general" to the "essentially equivalent" provision of § 115 (g)(1) of the 1939 Code. According to the Government, even under the old law it would have been improper for the Court of Appeals to rely on "a business purpose for the redemption" and "an absence of the proscribed tax avoidance purpose to bail out dividends at favorable tax rates." See *Northup* v. *United States,* 240 F. 2d 304, 307 (C. A. 2d Cir. 1957); *Smith* v. *United States,* 121 F. 2d 692, 695 (C. A. 3d Cir. 1941); cf. *Commissioner* v. *Estate of Bedford,* 325 U. S. 283 (1945). However, we need not decide that question, for we find from the history of the 1954 revisions and the purpose of § 302 (b)(1) that Congress intended more than merely to re-enact the prior law.

In explaining the reason for adding the "essentially equivalent" test, the Senate Committee stated that the House provisions "appeared unnecessarily restrictive, particularly, in the case of redemptions of preferred stock which might be called by the corporation without the shareholder having any control over when the redemption may take place." S. Rep. No. 1622, 83d Cong., 2d Sess., 44. This explanation gives no indication that the purpose behind the redemption should affect the

result.[10]  Rather, in its more detailed technical evaluation of § 302 (b)(1), the Senate Committee reported as follows:

> "The test intended to be incorporated in the interpretation of paragraph (1) is in general that currently employed under section 115 (g)(1) of the 1939 Code.  Your committee further intends that in applying this test for the future . . . the inquiry will be devoted solely to the question of whether or not the transaction by its nature may properly be characterized as a sale of stock by the redeeming shareholder to the corporation.  For this purpose the presence or absence of earnings and profits of the corporation is not material.  Example: X, the sole shareholder of a corporation having no earnings or profits causes the corporation to redeem half of its stock.  Paragraph (1) does not apply to such redemption notwithstanding the absence of earnings and profits."  S. Rep. No. 1622, *supra,* at 234.

The intended scope of § 302 (b)(1) as revealed by this legislative history is certainly not free from doubt.  However, we agree with the Government that by making the sole inquiry relevant for the future the narrow one whether the redemption could be characterized as a sale, Congress was apparently rejecting past court decisions that had also considered factors indicating the presence or absence of a tax-avoidance motive.[11]  At least that is

---

[10] See Bittker & Eustice, *supra,* n. 7, at 291: "It is not easy to give § 302 (b)(1) an expansive construction in view of this indication that its major function was the narrow one of immunizing redemptions of minority holdings of preferred stock."

[11] This rejection is confirmed by the Committee's acceptance of the House treatment of distributions involving corporate contractions—a factor present in many of the earlier "business purpose"

the implication of the example given. Congress clearly mandated that pro rata distributions be treated under the general rules laid down in §§ 301 and 316 rather than under § 302, and nothing suggests that there should be a different result if there were a "business purpose" for the redemption. Indeed, just the opposite inference must be drawn since there would not likely be a tax-avoidance purpose in a situation where there were no earnings or profits. We conclude that the Court of Appeals was therefore wrong in looking for a business purpose and considering it in deciding whether the redemption was equivalent to a dividend. Rather, we agree with the Court of Appeals for the Second Circuit that "the business purpose of a transaction is irrelevant in determining dividend equivalence" under § 302 (b)(1). *Hasbrook* v. *United States,* 343 F. 2d 811, 814 (1965).

Taxpayer strongly argues that to treat the redemption involved here as essentially equivalent to a dividend is to elevate form over substance. Thus, taxpayer argues, had he not bought Bradley's shares or had he made a subordinated loan to the company instead of buying preferred stock, he could have gotten back his $25,000 with favorable tax treatment. However, the difference between form and substance in the tax law

---

redemptions. In describing its action, the Committee stated as follows:

"Your committee, as did the House bill, separates into their significant elements the kind of transactions now incoherently aggregated in the definition of a partial liquidation. Those distributions which may have capital-gain characteristics *because they are not made pro rata* among the various shareholders would be subjected, at the shareholder level, to the separate tests described in [§§ 301 to 318]. On the other hand, those distributions characterized by what happens solely at the corporate level by reason of the assets distributed would be included as within the concept of a partial liquidation." S. Rep. No. 1622, *supra,* at 49. (Emphasis added.)

is largely problematical, and taxpayer's complaints have little to do with whether a business purpose is relevant under § 302 (b)(1). It was clearly proper for Congress to treat distributions generally as taxable dividends when made out of earnings and profits and then to prevent avoidance of that result without regard to motivation where the distribution is in exchange for redeemed stock.

We conclude that that is what Congress did when enacting § 302 (b)(1). If a corporation distributes property as a simple dividend, the effect is to transfer the property from the company to its shareholders without a change in the relative economic interests or rights of the stockholders. Where a redemption has that same effect, it cannot be said to have satisfied the "not essentially equivalent to a dividend" requirement of § 302 (b)(1). Rather, to qualify for preferred treatment under that section, a redemption must result in a meaningful reduction of the shareholder's proportionate interest in the corporation. Clearly, taxpayer here, who (after application of the attribution rules) was the sole shareholder of the corporation both before and after the redemption, did not qualify under this test. The decision of the Court of Appeals must therefore be reversed and the case remanded to the District Court for dismissal of the complaint.

*It is so ordered.*

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE and MR. JUSTICE BRENNAN concur, dissenting.

I agree with the District Court, 274 F. Supp. 466, and with the Court of Appeals, 408 F. 2d 1139, that respondent's contribution of working capital in the amount of $25,000 in exchange for 1,000 shares of preferred stock with a par value of $25 was made in order for the corporation to obtain a loan from the RFC and that the preferred stock was to be redeemed when the loan was

repaid.  For the reasons stated by the two lower courts, this redemption was not "essentially equivalent to a dividend," for the bona fide business purpose of the redemption belies the payment of a dividend.  As stated by the Court of Appeals:

> "Although closely-held corporations call for close scrutiny under the tax law, we will not, under the facts and circumstances of this case, allow mechanical attribution rules to transform a legitimate corporate transaction into a tax avoidance scheme." 408 F. 2d, at 1143–1144.

When the Court holds it was a dividend, it effectively cancels § 302 (b)(1) from the Code.  This result is not a matter of conjecture, for the Court says that in the case of closely held or one-man corporations a redemption of stock is "always" equivalent to a dividend.  I would leave such revision to the Congress.