Richard E. Probst and Helen M. Probst v. Commissioner.
Probst v. Commissioner
Docket No. 5265-68.
United States Tax Court
T.C. Memo 1970-328; 1970 Tax Ct. Memo LEXIS 29; 29 T.C.M. (CCH) 1501; T.C.M. (RIA) 70328; November 25, 1970, Field H. Thompson Nicholas, Jr., and Ernestine B. Powell, 738 HuntingtonBank Bldg., Columbus, Ohio, for the petitioner. Rodney G. Haworth, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: The respondent determined a deficiency of $13,773.45 in petitioners' income tax for the taxable year 1966. Petitioners have made concessions and there remains one question for decision: Whether the redemption from petitioner by his wholly-owned corporation of 250 shares of the corporation's preferred stock was essentially equivalent to a dividend. Findings of Fact Richard E. Probst (hereinafter sometimes referred to as petitioner) and Helen M. Probst are husband and wife and at the time of filing their petition herein resided in *31 Marion, Ohio. Petitioner and his wife filed a joint Federal income tax return for the taxable year 1966 with the district director of internal revenue, Cincinnati, Ohio. At all times material to this proceeding, the petitioner, Richard E. Probst, was an officer and director of the Probst Supply Company (sometimes hereinafter referred to as the company) and his wife was a director of the company. The Probst Supply Company during the year in issue was a wholesale distributor of industrial, plumbing and heating, and contractor supplies, serving 12 counties in North CentralOhio from a location in Marion, Ohio, and employing from 40 to 50 people. Originally the company was operated as a partnership by petitioner's father and two uncles. By 1956, with the retirement of petitioner's father and two uncles, the company consisted of a partnership of petitioner and his brother, John E. Probst. The company was incorporated on December 26, 1956, under the laws of the State of Ohio for the main reason of providing continuity of the business in the event of the death of petitioner or his brother. Upon incorporation of the company petitioner and his brother made a complete transfer of all interests *32 in the partnership to the corporation. The capital accounts of petitioner and his brother in the partnership on the agreed date of incorporation were as follows: John E. Probst
Richard E. Probst
Total
Balance January 1, 1956
$284,190.11
$264,222.76
$548,412.87
Net Income - 1956 127,248.83
127,248.83
254,497.66
Total
411,438.94
391,471.59
802,910.53
Partners' Drawings - Year Ended Dec. 31, 1956 84,311.88
83,382.98
167,694.86
Balance December 31, 1956 $327,127.06
$308,088.61
$635,215.67
The corporation's articles authorized 3,500 shares of no par common stock and 5,000 shares of 6 percent noncumulative, nonvoting preferred stock having a par value of $100. In exchange for transferring their interests in the partnership to the corporation, petitioner and his brother each received one-half of the 3,000 shares of common stock issued by the corporation and capitalized at $300,000. Petitioner received 40 percent (400 shares) of the preferred stock issued by the company and his brother got the remaining 60 percent, or 600 shares. The difference in the number of preferred shares issued was to balance the differential of approximately $20,000 *33 between the 1502 partnership capital accounts of petitioner and his brother. In addition, petitioner and his brother each received promissory notes from the corporation totaling $118,088.61 and $117,127.06, respectively, due 10 years from the execution date of January 1, 1957. The articles of incorporation provided that the company could redeem the preferred stock on 30 days' notice for $105 per share plus any declared but unpaid dividends. On January 23, 1957, petitioner and his brother executed an agreement entitled "STOCKHOLDERS' AGREEMENT" WHICH RESTRICTED THEIR RIGHT TO DISPOSE OF ANY OF THE COMMON STOCK OF THE COMPANY AND FURTHER PROVIDED: 2. Option to purchase stock on death. Upon the death of either John E. Probst or Richard E. Probst, the survivor shall have the option to purchase all of the common and preferred shares of stock of the Company owned by the other upon the following terms: (a) Exercise of Option. The option to purchase the stock of the decedent shall be exercised by the survivor by serving written notice on the administrator or executor of the decedent within thirty (30) days after the qualification of such administrator or executor. (b) Purchase *34 price. The purchase price for each share of common stock shall be the book value of each such share as shown on the balance sheet of the company as of the last day of the month prior to the date of death, prepared and certified by the accountant or firm of accountants then servicing the Company; and the purchase price of the preferred stock shall be One Hundred Dollars ($100.00) per share, plus any declared but unpaid dividends. (c) Payment of purchase price. Within ten (10) days after the exercise of this option, the survivor shall pay to the estate of the decedent not less than thirty-three and one-third per cent (33 1/3%) of the total purchase price to be paid for both said preferred and common stock, or One Hundred Thousand Dollars ($100,000.00), whichever is greater, and shall deliver to the estate of the decedent promissory notes for the balance of the purchase price providing for equal annual payments of the balance of the principal over a period not to exceed three (3) years from the date of the decedent's death, the first annual payment to be made one year after the date of the decedent's death. The survivor shall have the right to repay the entire unpaid principal and *35 accrued interest on thirty (30) days' written notice to the decedent's estate. Such promissory notes shall bear interest at the rate of four per cent (4%) per annum, payable annually, and shall provide for the acceleration of the maturity of the unpaid principal and interest of all promissory notes upon default in the payment of any installment of principal or interest. (d) Security for payment. The entire stock of the decedent shall be pledged with the decedent's estate to secure the full payment of the purchase price. So long as the survivor is not in default, he shall have all voting and dividend rights in the common stock of the decedent. Upon full payment of the purchase price the decedent's estate shall transfer such stock to the survivor with all necessary federal and state transfer tax stamps attached. John died on October 16, 1965, and was survived by his wife, Mabel Probst (hereinafter sometimes referred to as Mabel), and an adopted daughter. Pursuant to the stockholders' agreement petitioner exercised his option to purchase John's stock. After exercising his option petitioner received no response from Mabel who was administratrix of John's estate. Consequently on December 15, 1965, petitioner *36 deposited the first installment payment required by the shareholder' agreement in escrow with the Marion County Bank together with three notes covering the balance of the installment payments due under the shareholders' agreement. The bank was instructed to release the cash and notes upon receiving a proper assignment of John's stock. Concurrent with the establishment of the escrow on December 15, 1965, petitioner wrote Mabel a letter telling her of the escrow and its terms, and also offering to allow her to retain the preferred stock. Mabel was not very well informed about the shareholders' agreement until after John's death. Herinitial reaction to the shareholders' agreement was that she wanted to retain John's stock and even take part in the business. Petitioner, however, felt he was unable to work with Mabel in the management of the company. After some continued resistance by Mabel, petitioner was able to enforce the shareholders' agreement on February 22, 1966. At that time all of John's common and preferred stock was transferred to petitioner and registered in his name. Petitioner, however, did not rely on the installment payment provision of the shareholders' agreement but *37 rather paid John's estate the full amount of $322,000 due for the 1503 stock. The right to pay in installments was waived by petitioner to encourage a transfer of the stock by Mabel and to finally settle the matter. The funds to make the $322,000 payment were borrowed by the petitioner from the Huntington National Bank of Columbus, Ohio. Petitioner's agreement with the bank required that he repay a substantial portion of the $322,000 by May 22, 1966. On May 23, 1966, the company redeemed from the petitioner 250 shares of its preferred stock for $25,000 paying no premium on the redemption. Also redeemed were $75,000 of the debentures which had been issued to the petitioner upon the incorporation of the company. The redemption was made so that petitioner would have $100,000 with which to make the required repayment of a substantial amount under his loan agreement with Huntington National Bank. Although the surplus of the company could adequately cover the redemption of the preferred stock, the company did not have sufficient liquid assets to pay that amount. To acquire sufficient funds for the redemption, the company placed a mortgage on its real estate. Both immediately before *38 and after the redemption of the preferred stock petitioner owned 100 percent of the outstanding common and preferred stock of the company. At the time of the redemption the company was not planning or anticipating a contraction of its business. The company paid regular and substantial dividends during the year of redemption and for the 9 years preceding. None of the funds received by petitioner upon redemption of the 250 shares of preferred stock were reported as income on petitioner's 1966 Federal income tax return. In a statutory notice dated August 16, 1968, respondent stated: On May 23, 1966, the Probst Supply Co., redeemed 250 shares of its preferred stock from you for the sum of $25,000.00. It is determined that this transaction was essentially equivalent to a dividend under section 301 of the Internal Revenue Code and is includable in your gross income under section 61. Opinion This case brings before the Court the question of whether the redemption of 250 shares of preferred stock from the sole shareholder of the redeeming corporation constitutes a dividend. [1] Since petitioner agrees that the redemption was not substantially disproportionate, *39 and it was not in termination of his interest, petitioner must show that the redemption was not essentially equivalent to a dividend. [2]
*40 Petitioner and his brother, John E. Probst, were originally partners in the Probst Supply Co. which was engaged in the business of heating and plumbing supply. When the company, by transfer of the partnership assets, was incorporated under the laws of Ohio on December 26, 1956, the $300,000 in common stock issued by the company was evenly divided between the two brothers. Petitioner took 40 percent of the preferred stock issued by the company and John took 60 percent. The unequal division of the preferred stock reflected the difference in petitioner's and John's capital accounts in the partnership. Petitioner and John also received promissory notes from the company. Concurrently with the incorporation of the company, petitioner and John entered into what was called a "STOCKHOLDERS' AGREEMENT." The agreement was a buy-sell agreement providing that 1504 upon the death of one of the brothers the other surviving brother had the right to purchase the deceased's stock and notes at book value. The survivor was also given the right to pay the required consideration in installments over a 3-year period and to make a lump sum settlement at any time during that period. The agreement was *41 designed to prevent persons who had not participated in the business from acquiring an interest in the company. With the death of John on October 16, 1965, petitioner attempted to exercise his rights under the stockholders' agreement. However, Mabel Probst, John's widow and the administratrix of his estate, resisted the attempt because she wanted to hold the stock and notes and to come into the business. Since petitioner felt he could not work with Mabel in the management of the business, he insisted upon his right to buy John's interest. Petitioner evidenced a willingness to compromise and expedite settlement of the matter by offering to allow Mabel to retain the preferred stock. Ultimately petitioner was able to enforce the agreement and on February 22, 1966, he acquired all John's stock and notes in the company. With this, petitioner became the sole stockholder of the Probst Supply Company. As an inducement for compliance with the stockholders' agreement and to obviate the need of dealing further with Mabel, petitioner paid the entire $322,000 book value of the notes and stocks in a lump sum. Since he did not have sufficient cash to make the lump sum payment, petitioner borrowed *42 the money from the Huntington National Bank of Columbus, Ohio. A condition of the bank loan was that a substantial amount be repaid by May 22, 1966. On May 23, 1966, the company redeemed from petitioner 250 shares of its preferred stock for $25,000 and $75,000 worth of debentures. The proceeds of the redemption were used to pay the substantial amount required as a term of the loan from the bank. The company did not have sufficient liquid assets to make the redemption and, thus, mortgaged its real estate to acquire the funds. The essence of petitioner's initial position is that because the funds realized on the redemption were utilized in a scheme to acquire John's stock under the stockholders' agreement, and because petitioner could not work with Mabel, there was a sufficient business reason for the redemption. The presence of a sufficient business reason, in petitioner's view, prevents the redemption from being essentially equivalent to a dividend. Subsequent to the trial of this case the United States Supreme Court decided United States v. Davis, 397 U.S. 301 (1970). Davis involved a taxpayer who, because of the attribution rules of section 318, was considered *43 the sole stockholder of a corporation. The taxpayer had at one time contributed $25,000 to the capital of the corporation and received in exchange 1,000 shares of $25 par value preferred stock. The contribution was made so that the corporation would have sufficient working capital to qualify for a loan from the Reconstruction Finance Corporation. When the loan was paid back to the RFC, the preferred stock was redeemed at par value, i.e., the same amount the taxpayer had paid into the corporation. Reversing the Court of Appeals for the Sixth Circuit, the Supreme Court decided the redemption was essentially equivalent to a dividend. The Supreme Court said: After application of the stock ownership attribution rules, this case viewed most simply involves a sole stockholder who causes part of his shares to be redeemed by the corporation. We conclude that such a redemption is always "essentially equivalent to a dividend" within the meaning of that phrase in § 302(b)(1) * * *. * * * Congress clearly mandated that pro rata distributions be treated under the general rules laid down in §§ 301 and 316 rather than under § 302, and nothing suggests that there should be a different result *44 if there were a "business purpose" for the redemption. * * * We conclude that the Court of Appeals was therefore wrong in looking for a business purpose and considering it in deciding whether the redemption was equivalent to a dividend. Rather, we agree with the Court of Appeals for the Second Circuit that "the business purpose of a transaction is irrelevant in determining dividend equivalence" under § 302(b)(1). Hasbrook v. United States, 343 F. 2d 811, 814 (1965). * * * [To] qualify for preferred treatment under that section, a redemption must result in a meaningful reduction of the shareholder's proportionate interest in the corporation. Clearly, taxpayer here, who * * * was the sole shareholder of the 1505 corporation both before and after the redemption, did not qualify under this test. * * * We understand and appreciate petitioner's desire to enforce the stockholders' agreement and acquire his deceased brother's corporate interest. There appears no reason to doubt that petitioner was not motivated by tax avoidance considerations when he took the path he did in acquiring the shares. Petitioner, however, was acting to enforce an agreement which was between *45 himself and his brother and did not acquire the stock as an agent for the company as he contends in his reply brief. See, Frank Ciaio, 47 T.C. 447, 461 (1967). It is clear that petitioner was the sole stockholder of the Probst Supply Company at the time of the redemption and that he caused his company to redeem 250 shares of its preferred stock from petitioner. Because of Davis, supra, it is not open to this Court to determine if petitioner had a business reason for the redemption and whether such a reason would be sufficient to prevent dividend treatment for the redemption, and on the authority of Davis we are compelled to conclude that the redemption was essentially equivalent to a dividend. Estate of William F. Runnels, 54 T.C. 762 (1970). In accordance with the foregoing, and because the only other adjustment proposed in the statutory notice was conceded by petitioner, Decision will be entered for the respondent. Footnotes
1. There appears to be no question as to whether the earnings and profits of the corporation were sufficient to cover the distribution. ↩
2. SECS. 301 and 302 of the Internal Revenue Code of 1954 provide as follows: SEC. 301. DISTRIBUTIONS OF PROPERTY. (a) In General. - Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c). * * * (c) Amount Taxable. - In the case of a distribution to which subsection (a) applies - (1) Amount constituting a dividend. - That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income. SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK. (a) General Rule. - If a corporation redeemed its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock. (b) Redemptions Treated as Exchanges - (1) Redemptions not equivalent to dividends. - Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend. * * * (d) Redemptions Treated as Distributions of Property. - Except as otherwise provided in this subchapter, if a corporation redeems its stock (within the meaning of section 317(b)), and if subsection (a) of this section does not apply, such redemption shall be treated as a distribution of property to which section 301↩ applies.