William O. Hays and Margery J. Hays v. Commissioner.
Hays v. Commissioner
Docket No. 2219-69 SC.
United States Tax Court
T.C. Memo 1971-95; 1971 Tax Ct. Memo LEXIS 236; 30 T.C.M. (CCH) 378; T.C.M. (RIA) 71095; May 3, 1971, Filed Claude L. Eichel, City Nat'l Bank Bldg. *237 , Miami, Fla., for the petitioners. W. Reeder Glass, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: Respondent determined a deficiency of $750 in petitioners' income tax for the taxable year 1966. The sole question before us is whether the redemption of certain preferred stock owned by petitioner William O. Hays was essentially equivalent to a dividend under sections 302 and 316. [1]
Findings of Fact Some of the facts were stipulated. The stipulation and the exhibits attached thereto are incorporated herein by this reference. William O. Hays (sometimes hereinafter referred to as Hays) and Margery J. Hays are husband and wife, and at the time of filing their petition herein resided in Miami, Florida. They filed their joint Federal income tax return for the taxable year 1966 with the district director of internal revenue, Jacksonville, Florida. Hays has been in the advertising business for approximately 25 years. On April 26, 1965, he formed his own advertising agency known as Hays Advertising Associates, Inc. (referred *238 to hereinafter as Associates). Associates was authorized to issue up to 1,000 shares of common stock and 3,000 shares of $10 par value, 6 percent, cumulative, nonvoting preferred stock. Hays was issued 800 shares of common stock at $1 per share and Robert M. Souers (hereinafter referred to as Souers) was issued the remaining 200 shares of common stock also at $1 per share. These shares were issued immediately after the incorporation of Associates and have remained outstanding and owned by the same persons from then until the present. Souers had been a friend of Hays for many years. At all times relevant hereto, Souers was a hotel manager. Although Souers owned stock in Associates he was not personally interested or involved in the advertising business. In the advertising industry, agencies such as Associates are rated by credit rating bureaus so that credit ratings can be supplied to publishers. An agency, when placing advertisements for its clients deals directly with the publishers and is billed directly for the cost of the advertising. The purpose of the credit rating is to give publishers some basis on which to determine whether credit will be extended to an agency. A good *239 credit rating is necessary for an advertising agency such as Associates, because it is not possible to operate on a cash payment basis. Once an agency has achieved a record of payment of bills, its credit becomes established. In the meantime an agency must submit financial statements to a credit rating bureau. Periodical Publishers Association is one of the large credit rating bureaus in the advertising industry. During the period of June, 1965, through December, 1966, Associates submitted quarterly financial statements to the Periodical Publishers Association. Associates continued to submit financial statements at least every six months through 1968, but is no longer required to do so because its credit has become established. At the time Associates was being formed, Hays felt that additional capital would be needed in order to present a more favorable balance sheet for credit purposes. He estimated that $30,000 would be required for this purpose. Petitioners did not have funds available in this amount. Souers, however, had $30,000 which he was willing to make available to the business for purposes of improving Associates' credit worthiness. It was felt that a direct loan of $30,000 *240 to Associates by Souers should not appear on Associates' balance sheet because a liability of that magnitude would adversely affect its credit rating and defeat the purpose of placing the funds in the corporation. Because of this, and a desire by Hays to retain voting control of Associates, it was suggested by Hays that preferred stock be issued to Souers for the $30,000. However, counsel for Souers objected to issuance of preferred stock to his client because he believed it would not afford Souers sufficient security. Hays and his attorney had a discussion of the matter with Souers and his attorney at which time Souers gave Hays a check for $30,000 which was to be used to start the corporation. Thereafter petitioners gave Souers their personal note for $30,000. They then paid the $30,000 to Associates in exchange for 3,000 shares of 6 percent, cumulative, nonvoting $10 par value preferred stock which were issued to Hays. 380 The note given by petitioners to Souers, dated May 3, 1965, was in the principal amount of $30,000, and bore interest at the rate of 6 percent per annum on the unpaid balance. It provided that the petitioners were liable jointly and severally, and that *241 the loan would be secured by all 3,000 shares of Associates perferred stock which had been issued to Hays and also by 310 shares of Hays' common stock in Associates. The principal amount of the note was payable as follows: Date
Amount
May 1, 1966
$ 3,000
May 1, 1967
5,000
May 1, 1968
7,000
May 1, 1969
7,000
May 1, 1970 8,000
$30,000
The stock securing the loan was put in escrow. In addition to placing the stock in escrow, Hays agreed to waive any restrictions in the corporate charter on inspection of Associates' books by Souers, to obtain a $30,000 term life insurance policy on his life with Souers as the beneficiary, and to restrict the size of his salary to $25,000 per year. As to the $30,000, the books and records of Associates reflected only the issuance of the 3,000 shares of preferred stock to Hays, and did not show any transactions with Souers in the nature of a loan. The $30,000 placed in Associates by Hays was not needed by Associates for operating capital but was placed in the corporation solely for the favorable effect it might have on the corporation's credit rating. It was to continue as capital on Associates' books until such time *242 as the corporation's credit was established. At a meeting of Associates' stockholders and directors on April 15, 1966, it was decided to declare a $0.60 per share dividend on Hays' 3,000 shares of preferred stock and also to redeem 300 of those shares. Petitioners received from Associates $1,800 as a preferred stock dividend and utilized that money to pay the interest accrued on the $30,000 borrowed from Souers. The accrued interest equaled $1,800 and was due May 1, 1966. Petitioners also received from Associates $3,000 representing a payment in redemption of 300 shares of Hays' preferred stock at $10 per share. Petitioner utilized the $3,000 to pay Souers the principal installment on the $30,000 loan which was due May 1, 1966, in the amount of $3,000. Hays initiated the action to redeem the preferred stock in 1966 in order to have funds to pay the principal installment due Souers. There was never any plan, on the part of Hays, to redeem all or any part of his common stock in Associates. Both prior to and subsequent to the 1966 stock redemption, Hays was in complete control of Associates. He was the only account executive, copy writer and creative director, as well as being president. *243 The 1966 stock redemption had no effect on Souers' relationship to Associates; he remained inactive. There was no contraction or reduction of Associates' business subsequent to the 1966 stock redemption. The redemption had no effect on the activities of the corporation insofar as the generation of business and daily operations were concerned. Associates had sufficient earnings and profits in its taxable year in which the 1966 stock redemption occurred to pay Hays a dividend in the amount of $3,000. Its retained earnings at the beginning and end of its taxable year ending March 31, 1967, were $6,324 and $3,558, respectively. Associates computes its taxes and files its returns on the basis of a fiscal year ending March 31. In 1967, Associates declared a dividend of $1,620 on Hays' preferred stock, and redeemed 500 shares for $5,000. These amounts were applied by petitioners to the interest due and the outstanding balance, respectively, on the loan from Souers. The remaining 2,200 shares of stock outstanding were redeemed by Associates in 1968. Hays accepted as payment for his preferred stock the assumption by Associates of petitioners' remaining obligation to Souers of $22,000. The *244 entire block of stock was redeemed in 1968 when Associates had no earnings and profits to avoid any problem as to whether the redemption would be essentially equivalent to a dividend and because Associates' credit had been established. None of the funds received by Hays upon the redemption of the 300 shares of preferred stock in 1966 were reported as income on petitioners' 1966 Federal income tax return. In a statutory notice dated February 14, 1969, respondent stated: It is determined that the amount of $3,000.00 which you received upon the redemption of preferred stock of Hays Advertising Associates, Inc., was essentially equivalent to a dividend in accordance with sections 302 and 316 of the 381 Internal Revenue Code of 1954. Accordingly, your gross income has been increased by $3,000.00. Opinion We must determine whether the redemption of 300 shares of preferred stock from William O. Hays in 1966 by Hays Advertising Associates, Inc. for $3,000 was a payment in exchange for the stock or, on the contrary, was a distribution essentially equivalent to a dividend. [2]
*245 Associates is an advertising agency established by Hays in April, 1965. Hays owned 800 of the 1,000 shares of Associates' common stock outstanding, and a friend of his, Robert M. Souers, owned the other 200. To improve the appearance of Associates' balance sheet and, thus secure a favorable credit rating from Periodical Publishers Association, Hays felt additional capital in the amount of $30,000 was necessary. Souers expressed a willingness to provide the additional funds which Hays did not have available from his own resources. Souers did not want to make an equity investment in Associates by reason of its lack of security. On the other hand, a direct loan to Associates would not have the desired positive effect on its credit rating because a liability in the amount of $30,000 would appear on the balance sheet. Consequently on May 3, 1965, the $30,000 was loaned directly to Hays and his wife, and then paid to Associates by Hays in return for 3,000 shares of nonvoting preferred stock. On April 15, 1966, Associates paid Hays a dividend of $1,800 on his preferred stock and also redeemed 300 of those shares at par for a total amount of $3,000. The funds so received were applied to *246 pay interest and reduce the principal due on the loan from Souers. In 1967, 500 shares of Hays' preferred were redeemed by Associates for $5,000 and in 1968 the balance of 2,200 shares of preferred stock was redeemed and Associates assumed Hays' indebtedness to Souers in exchange. The years 1967 and 1968 are not before this Court. Initially petitioners contend that there is no issue of dividend equivalence because there was in fact no redemption. Rather, it is contended that Souers lent the money directly to the corporation and Hays was a mere conduit for the loan and its repayment. Thus, petitioners argue that the form of a loan to petitioners followed by the purchase of preferred stock and then its redemption was not the substance of the transaction. We cannot agree. It is clear that Souers would not commit the $30,000 directly to Associates except as a loan. Since this was not possible, in light to Hays' objectives, Souers lent the money to petitioners who in turn paid it to Associates in return for preferred stock issued to Hays. Nothing in the record indicates that petitioners were required to invest the $30,000 in Associates for Souers' benefit; nor is there any indication *247 that Souers looked to the corporation for repayment. Indeed the evidence shows that the books and records of Associates reflected only the issuance of 3,000 shares of preferred stock to Hays, and does not reveal any loan transactions with Souers, and we have so found. The note signed by the petitioners left them personally as well as jointly and severally liable for the full $30,000. By collateral agreements Hays agreed to place all his preferred stock and 310 shares of his common stock in escrow as security for the loan, and to take out a $30,000 life insurance policy in favor of Souers. Due to these factors and because the evidence does 382 not support an inference that there was a direct investment in Associates by Souers, we must conclude that the substance of this transaction comported with its form. Television Industries, Inc., 32 T.C. 1297, 1303 (1959), affirmed 284 F. 2d 322 (C.A. 2, 1960); E. H. Stolz, 30 T.C. 530, 535-536 (1958), affirmed per curiam 267 F. 2d 482 (C.A. 5, 1959). Petitioners rely on Fox v. Harrison, 145 F. 2d 521 (C.A. 7, 1944), affirming an unreported case ( E.D. Ill., 1943, 32 A.F.T.R. 1651, 43-2 USTC 9593), *248 and Frank Ciaio, 47 T.C. 447 (1967). These cases are inapposite. They deal with a situation where a corporation used a taxpayer-stockholder as a conduit or agent for the redemption of another stockholder's shares. Both cases held that the redemption in question was not substantially equivalent to a dividend to the taxpayer acting as a conduit. Here the preferred stock, which was precisely what it purported to be, was never owned by Souers in any manner, but, rather, always owned by Hays. Having determined that Hays, in substance as well as form, owned 3,000 shares of Associates' preferred stock, we now turn to the question of whether the redemption of 300 of those shares in 1966 was substantially equivalent to a dividend. There are a number of criteria which are relevant to a determination of this issue. Included are: whether the distribution was substantially pro rata among the stockholders; whether there has been a substantial change in the ownership and control of the corporation; whether earnings and profits were available for dividends; the dividend history of the corporation; *249 whether the initiative for the redemption came from the stockholders or the corporation; whether the redemption resulted in a contraction of the corporation's activities. United States v. Fewell, 255 F. 2d 496, 500-501 (C.A. 5, 1958), reversing an unreported case ( S. D. Fla., 1957, 52 A.F.T.R. 1374, 57-2 USTC 9705); Beatrice Levin, 47 T.C. 258, 263 (1966), affirmed 385 F. 2d 521 (C.A. 2, 1967). No single factor is conclusive, rather all the circumstances of the case must be considered, and the determination is one of fact. Ralph L. Humphrey, 39 T.C. 199, 206 (1962). Since the decision in United States v. Davis, 397 U.S. 301 (1970), a business purpose for a redemption has not been a relevant consideration. The distribution made to Hays upon the redemption of 300 shares of his preferred stock was not substantially pro rata. This is apparent when it is seen that while Hays owned only 80 percent of the common stock, he received 100 percent of the amount distributed in redemption of the preferred stock. Hays was given 20 percent more than he could have received had the distribution been a dividend on *250 Associates' common stock. Cf. Cobb v. Callan Court Company, 274 F. 2d 532, 538 (C.A. 5, 1960), affirming an unreported opinion ( N.D. Ga., 1958, A.F.T.R. 2d 5677, 58-2 USTC 9797). Our inquiry does not stop here, rather we must determine whether the redemption resulted in a "meaningful reduction" of Hays' proportionate interest in the corporation. United States v. Davis, supra, at 313. The redemption of 300 out of 3,000 shares of preferred stock held by Hays cannot be termed "meaningful." Also, whatever significance the reduction might have standing alone, its importance is diminished upon consideration of the fact that Hays remained owner of 80 percent of the common stock in Associates. Thus while his right to earnings and profits via the preferred stock was reduced by the amount of $180, he continued to have access to 80 percent of that amount via his common stock. Since Hays owned the overwhelming majority of the common, the only voting stock, his ability to declare dividends was assured. Petitioners maintain there was a meaningful reduction of Hays' interest because the redemption during the year in issue was but the first step in *251 a series by which the entire preferred stock interest of Hays would be redeemed. A meaningful reduction took place, it is argued, because under the scheme Hays was to have his interest in the capital of Associates reduced from 99.4 percent in 1965 to 80 percent in 1970. For the principal invoked by petitioners to apply, the redemption in question must have been a step in the complete termination of Hay's interest in Associates according to a fixed plan. In re Lukens' Estate, 246 F. 2d 403, 406 (C.A. 3, 1957), reversing 26 T.C. 900 (1956); Otis P. Leleux, 54 T.C. 408, 418 (1970); cf. Friend v. United States, 345 F. 2d 761, 764-765 (C.A. 1, 1965), affirming 226 F. Supp. 814 (D. Mass., 1964). Clearly that is not the situation here, and the redemption in question must be tested 383 by conditions prevailing during the year in which it occurred. Application of the other determinates of dividend equivalence do not favor the petitioners. It appears from the facts, and petitioners do not deny, that Associates had sufficient earnings and profits to pay a dividend in the amount of the redemption. The 6 percent dividend *252 received by Hays on account of his preferred stock was, for all the record shows, the only dividend paid by Associates during its fiscal year ending March 31, 1967. There is no indication that Associates declared any dividends in the prior fiscal year, although it ended that year with retained earnings in the amount of $6,324. Both before and after the redemption, Hays was in control of Associates. Subsequent to the redemption there was no contraction of Associates' business. Finally, Hays himself testified that the redemption was at his initiative so that he would have funds with which to repay Souers. Our examination of the facts of this case causes us to conclude that the redemption in 1966 by Associates of 300 shares of preferred stock from Hays was substantially equivalent to a dividend, and we so hold. In accordance with the foregoing, Decision will be entered for the respondent. Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. Sections 301 and 302 of the Internal Revenue Code of 1954 provide as follows: SEC. 301. DISTRIBUTIONS OF PROPERTY. (a) In General. - Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c). * * * (c) Amount Taxable. - In the case of a distribution to which subsection (a) applies - (1) Amount constituting dividend. - That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income. SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK. (a) General Rule. - If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock. (b) Redemptions Treated as Exchanges. - (1) Redemptions not equivalent to dividends. - Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend. * * * (d) Redemptions Treated as Distributions of Property. - Except as otherwise provided in this subchapter, if a corporation redeems its stock (within the meaning of section 317(b)), and if subsection (a) of this section does not apply, such redemption shall be treated as a distribution of property to which section 301↩ applies.