LaVerne V. Seda and LaVerne E. Seda, Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket No. 21201–82.     Filed March 19, 1984.

*Frank M. Cavanaugh*, for the petitioners.
*Mark H. Howard*, for the respondent.

OPINION

FAY, *Judge*: Respondent determined deficiencies in petitioners' Federal income tax as follows:

| Year | Deficiency |
| --- | --- |
| 1979 | $22,015 |
| 1980 | 17,801 |

The issues before us are (1) whether the redemption of all petitioners' stock in a certain corporation was taxable as a dividend distribution under section 301[1] or as a long-term capital gain under section 302(a), and (2) whether a certain sum was paid to petitioner LaVerne V. Seda as compensation for his services or as partial payment for his redeemed stock.

The facts have been fully stipulated and are so found.

Petitioners LaVerne V. Seda (Mr. Seda) and LaVerne E. Seda (Mrs. Seda), resided in Denver, Colo., when they filed their petition herein.

On October 15, 1957, petitioners organized B & B Supply Co. (herein the company), and, within 2 years after incorporation, they had acquired all of the company's stock. Mr. Seda was the company's president and chairman of the board and owned 22,910 shares of the company's stock. Mrs. Seda was a director, vice president, and secretary and owned 1,010 shares of the company's stock.

The company was engaged in the business of selling garage doors as a wholesaler in Colorado and Wyoming. It purchased most of the garage doors from Frantz Manufacturing Co. (herein Frantz Co.). In addition to working for the company from approximately 1952 until April 1981, Mr. Seda also worked as a manufacturer's representative for Frantz Co.,

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years in issue.

earning a 3-percent commission on all garage door sales he made to the company on behalf of Frantz Co.

Because of their declining health, in 1979, petitioners decided to terminate their ownership of the company. Their son James L. Seda (James) had worked for the company since 1973 and was ready to assume ownership and control of the company. On June 30, 1979, petitioners entered into a redemption agreement wherein the company redeemed all of petitioners' stock for $299,000 ($12.50 per share). Pursuant to the redemption agreement, the company also issued 1,000 shares of stock to James for $1,000. Thus, James was the sole shareholder of the company after the redemption. Petitioners resigned from their positions as officers and directors of the company on June 30, 1979.

Prior to signing the redemption agreement, petitioners hired an accountant to advise them with respect to the tax consequences of the redemption. The accountant advised them that in order to achieve long-term capital gain treatment, they would have to terminate their relationship with the company completely. Because of James' insistence, however, Mr. Seda continued to work for the company after the redemption, and he continued to receive a salary of $1,000 per month. Neither petitioners nor James believed such employment would prevent petitioners from achieving long-term capital gain treatment in connection with the redemption of their stock. In June 1981, immediately after learning that his employment relationship could result in the gain from the redemption of his stock being taxed as ordinary income, Mr. Seda terminated his employment relationship with the company. Mrs. Seda never served as an employee, officer, or director of the company after the redemption.

The company has never paid a dividend, and its retained earnings as of June 30, 1978, were $202,455.

On their returns for the years in issue, petitioners reported the proceeds from the redemption as long-term capital gain. In his notice of deficiency, respondent determined that the proceeds from the redemption were taxable as dividends under section 301 because the redemption was not a complete termination of petitioners' interest under section 302(b)(3).

The first issue is whether the redemption of all petitioners' stock in the company is taxable as a dividend distribution under section 301 or as long-term capital gain under section 302(a). Section 302(a) provides that a distribution of property to a shareholder by a corporation in redemption of stock will be treated as a sale or exchange of such stock if the redemption falls within one of four categories enumerated in section 302(b). If the redemption fails to so qualify, it is treated as a dividend distribution to the extent of the corporation's earnings and profits. See secs. 301 and 302(a).

Section 302(b)(3) provides that a shareholder is entitled to sale or exchange treatment if all his stock in the corporation is redeemed. For purposes of determining whether there has been a complete termination within the meaning of section 302(b)(3), the constructive stock ownership rules of section 318(a) will apply unless the requirements set out in section 302(c)(2)(A) are satisfied. Sec. 302(c)(1). Respondent contends that petitioners failed to effect a complete termination within the meaning of section 302(b)(3) because James' interest in the company after the redemption is attributable to petitioners pursuant to section 318(a)(1). Petitioners counter that James' interest is not attributable to them because they satisfied the requirements of section 302(c)(2)(A).

Section 302(c)(2)(A) provides in relevant part as follows:

(A) In the case of a distribution described in subsection (b)(3), section 318(a)(1) shall not apply if—

(i) immediately after the distribution the distributee has no interest in the corporation (*including an interest as officer, director, or employee*), other than an interest as a creditor,

(ii) the distributee does not acquire any such interest (other than stock acquired by bequest or inheritance) within 10 years from the date of such distribution, and

(iii) the distributee, at such time and in such manner as the Secretary by regulations prescribes, files an agreement to notify the Secretary of any acquisition described in clause (ii) and to retain such records as may be necessary for the application of this paragraph.

[Emphasis added.]

Focusing on the parenthetical language in section 302(c)(2)(A)(i), respondent's first argument is that petitioners are not entitled to the relief provided by section 302(c)(2)(A)

because Mr. Seda remained an employee of the company after the redemption. Petitioners argue, however, that section 302(c)(2)(A)(i) does not prohibit all employment relationships. Thus, they contend that Mr. Seda's employment after the redemption was not the retention of a prohibited interest in the company. For the following· reasons, we agree with respondent.

Congress' purpose in enacting section 302(c)(2) was to ensure‾ that the family attribution rules would not prevent a bona fide severance of a shareholder's interest in a corporation from resulting in capital gains treatment. H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong.,2d Sess. 36 (1954); S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 45 (1954). This Court has previously stated that it is reasonable to infer from the legislative history that in enacting section 302(c)(2)(A) Congress was primarily concerned with a situation where a redeeming shareholder retained a financial stake in the corporation or continued to control the corporation and benefit by its operations after making only a nominal transfer. of his stock. *Estate of Lennard v. Commissioner*, 61 T.C. 554, 561 (1974).

Although section 302(c)(2)(A)(i) may not prohibit the retention of all employment relationships,[2] it is clear that the level of employment engaged in by Mr. Seda herein is prohibited. After the redemption, Mr. Seda continued to work for the company for almost 2 years and received a salary of $1,000 per month. By receiving that salary, Mr. Seda did retain a financial stake in the company. Moreover, petitioners have failed to show that Mr. Seda ceased to be involved in the management of the company after the redemption. The fact that petitioners did not know that Mr. Seda's continued employment would prevent them from achieving long-term capital gain treatment is unfortunate, but not controlling. Thus, we find that petitioners failed to satisfy section 302(c)(2)(A)(i).[3]

Accordingly, James' interest in the company is attributable to petitioners and, therefore, petitioners failed to effect a complete redemption of all of their stock within the meaning

---

[2] See *Lewis v. Commissioner*, 47 T.C. 129, 137 (1966) (Simpson, J., concurring).

[3] Since petitioners failed to satisfy sec. 302(c)(2)(A)(i), it is unnecessary for us to determine whether or not they satisfied sec. 302(c)(2)(A)(ii) and (iii).

of section 302(b)(3). Thus, the proceeds from the redemption are taxable under section 302(d) as a dividend distribution to the extent of the company's earnings and profits.[4]

## Post-Redemption Payments

The second issue for decision is whether the sum of $18,000 received by Mr. Seda after the redemption was compensation for services or partial payment for his redeemed stock.[5] Petitioners reported this amount as salary on their returns for the years in issue. They subsequently filed amended returns, however, wherein they claimed the $18,000 was partial payment for Mr. Seda's stock. Thus, petitioners now claim an overpayment of $3,240 for 1979 and $6,690 for 1980.

Petitioners contend that if we find they satisfied section 302(c)(2)(A)(i), in that they did not retain a prohibited interest in the company, then it must necessarily follow that the $18,000 received by Mr. Seda after the redemption was not compensation for services. Since in our first holding we concluded that petitioners did not satisfy section 302(c)(2)(A)(i), we reject petitioners' contention. Accordingly, since there is no evidence that the $18,000 was anything but salary, petitioners are not entitled to an overpayment for the years in issue.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

SIMPSON, WILES, WILBUR, CHABOT, KÖRNER, SHIELDS, COHEN, and SWIFT, *JJ.*, agree with the majority opinion.

---

[4]Petitioners' redemption does not fall within any of the other categories enumerated in sec. 302(b) because the attribution rules result in their owning 100 percent of the company's stock both before and after the redemption. See *United States v. Davis*, 397 U.S. 301 (1970).

[5]This issue was raised by petitioners in their amended petition filed on May 18, 1983, wherein they claim a refund of $3,240 for 1979 and $6,690 for 1980.

WHITAKER, *J.*, concurring: While I concur in the result reached, the majority fails to apply the per se rule which, in my opinion, is mandated by the statute. Section 302(c)(1) and (2)(A)(i) prescribes that the family attribution rules may not be waived if after a redemption the former shareholder performs any services for, or receives any remuneration from, the redeeming corporation as an officer, director, or employee. The parenthetical language of section 302(c)(2)(A)(i)—"(including an interest as officer, director, or employee)"—is neither ambiguous nor equivocal; it contains no qualification such as that suggested by the majority. Nothing in the statutory language or legislative history suggests that an "interest as officer, director, or employee" must be substantial to be prohibited. Rather, it contains a flat rule.

While Congress did not address directly the issue of whether a per se rule was to be applied in interpreting the parenthetical language of section 302(c)(2)(A)(i), it is clear that section 302(c) was intended to bring an element of certainty to an area that had become a confusing morass under prior law. Congress recognized that it was necessary to replace the difficult detailed factual inquiries that had become commonplace. With regard to corporate redemptions, the House report states:

*Redemptions of stock.*—Under present law it is not clear when a stock redemption results in capital gain or ordinary income. * * *

Your committee's bill sets forth definite conditions under which stock may be redeemed at capital-gain rates. * * *

At the present time a possible opportunity for tax avoidance results where redemptions are effected in the case of family-owned corporations. To prevent tax avoidance, but at the same time to provide definitive rules for the guidance of taxpayers, your committee has provided precise standards whereby under specific circumstances, a shareholder may be considered as owning stock held by members of his immediate family (or by partnerships, corporations, or trusts which he controls). [H. Rept. 1337, 83d Cong., 2d Sess. 35–36 (1954).]

Section 302(c) thus was enacted as something of a "safe haven."[1] Facts and circumstances must be considered in the application of some of the section 302(b) and (c) rules, such as the determination under section 302(b)(1) as to dividend equivalency, but we should not judicially modify the mechanical rules where they can be applied mechanically. Contrary to the majority's view, Congress did intend to "prohibit the retention of all employment relationships." In the context of *Lewis v. Commissioner*, 47 T.C. 129 (1966), I do agree with Judge Simpson that "Congress did not intend us to hold that an officer or director who performs no duties, receives no compensation, and exercises no influence has retained an interest in the corporation." 47 T.C. at 137 (Simpson, J., concurring). The principle of substance over form prevents us from applying the per se rule where no duties are performed and no compensation received by reason of status as an officer, director, or employee. But where, as here, the facts are otherwise, the congressional attempt to achieve certainty should be allowed to operate.[2]

Our two more recent cases, *Chertkof v. Commissioner*, 72 T.C. 1113 (1979), affd. 649 F.2d 264 (4th Cir. 1981), and *Estate of Lennard v. Commissioner*, 61 T.C. 554 (1974), are not inconsistent with the per se rule. They simply recognize that where the interest challenged is something other than an interest as an officer, director, or employee, we must examine the facts and circumstances.

Obviously, I agree with the majority that the redemption of petitioners' stock in the instant proceeding should not be treated as a distribution in exchange for petitioners' stock under section 302(b)(3). My disagreement is with the majority's

---

[1] Rose, "The Prohibited Interest of Section 302(c)(2)(A)," 36 Tax L. Rev. 131, 145 (1981). A "safe haven" is not very safe where it depends on being able to forecast what this Court may consider to be a permissible "level of employment." "When the resolution of an issue hinges on factual determinations, each case will turn on the circumstances there involved. As previously noted, while such an ad hoc administration provides flexibility, it impairs the predictability of consequences." Kahn, "Stock Redemptions: The Standards for Qualifying as a Purchase Under Section 302(b)," 50 Fordham L. Rev. (Part I) 1, 28 (1981–82).

[2] Conservative tax advice, including apparently the advice petitioners received from their tax accountant, has long opted for resignation by a redeeming shareholder. See Gardner & Randall, "Distributions in Redemption of Stock: Changing Definitions for a Termination of Interest," 8 J. Corp. Tax'n 240, 248 (1981–82); and Bittker, "Stock Redemptions and Partial Liquidations Under the Internal Revenue Code of 1954," 9 Stanford L. Rev. 13, 33 (1956).

insistence on judicially legislating this Court into the additional burden of inquiring into the level of employment.

DAWSON, STERRETT, GOFFE, NIMS, PARKER, HAMBLEN, and CLAPP, *JJ.*, agree with this concurring opinion.