**In re KROY (EUROPE) LIMITED; Kroy, Inc., Debtors.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**KROY (EUROPE) LIMITED; Kroy, Inc., Defendants–Appellants.**

**No. 92–17099.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 18, 1994.

Decided June 14, 1994.

Robert E. Miles, Fred T. Witt, Jr., and Streich Lang, Phoenix, AZ, for appellants Kroy (Europe) Ltd. and Kroy Inc.

Gary R. Allen, Gilbert S. Rothenberg, and Bridget M. Rowan, Tax Div. U.S. Dept. of Justice, Washington, DC, for appellee U.S.

Before: REINHARDT and LEAVY, Circuit Judges, and McLAUGHLIN, District Judge.[*]

* The Honorable Linda H. McLaughlin, United States District Judge for the Central District of California, sitting by designation.

Opinion by Judge McLAUGHLIN.
Special Concurrence by Judge
REINHARDT.

McLAUGHLIN, District Judge:

Kroy (Europe) Limited and Kroy, Inc. (collectively "Kroy") appeal from the grant of summary judgment in favor of the United States. We have jurisdiction pursuant to 28 U.S.C. § 158(d). We reverse.

## I

### Standard of Review

The parties stipulated to the facts. We review the grant of summary judgment *de novo*. *Church of Scientology v. IRS*, 991 F.2d 560, 562 (9th Cir.1993).

## II

### Background

Kroy is a manufacturer of computer-based lettering systems. In 1986, Kroy decided to go private through a leveraged buyout ("LBO"). Kroy did not have the funds to repurchase its stock. Kroy borrowed $60.6 million from First Bank of Minneapolis ("First Bank") and Quest Equities Corp. ("Quest") to finance the LBO. To obtain the loans, Kroy paid the following fees (the "Loan Fees"), which Kroy amortized and deducted as ordinary and necessary business expenses: (i) an "advisory fee" of $1,200,000 and a "placement fee" of $625,000 to Bankers Trust Corporation ("Bankers Trust");[1] (ii) a "credit arrangement and facility fee" of $1,000,000 to Quest; (iii) a "commitment fee", "closing fee", and "bank agent fee" totalling $667,000 to First Bank; and (iv) $599,170 for reimbursement of the legal and accounting fees of Bankers Trust, Quest and First Bank. In sum, the Loan Fees totalled $4,091,170 which Kroy amortized and deducted.[2]

The Internal Revenue Service audited Kroy's tax returns for the tax years ending

March 1986, 1987, 1988, 1989 and 1990, and disallowed Kroy's deductions for the Loan Fees, which resulted in a net deficiency for Kroy.

In 1990, Kroy voluntarily declared Chapter 11 bankruptcy. The government submitted a proof of claim for unpaid corporate income taxes. Kroy objected and requested the Bankruptcy Court to determine its tax liability under 11 U.S.C. § 505. The parties submitted the dispute to the Bankruptcy Court on stipulated facts and cross motions for summary judgment. The Bankruptcy Court granted Kroy's motion for summary judgment, thereby allowing Kroy's deductions for the Loan Fees. The government appealed. The district court reversed and disallowed Kroy's deductions for the Loan Fees. We now reverse the district court and find that Kroy's deductions are allowable as ordinary and necessary business expenses.

## III

### Analysis

The Government's position is that, although costs incurred to borrow funds may be deducted and amortized, the Loan Fees incurred by Kroy are not deductible because IRC § 162(k) disallows any amount paid by a corporation in connection with the redemption of its stock. The applicable portion of IRC § 162(k) provides as follows:

**(k) Stock redemption expenses—**

**(1) in general.**—Except as provided in paragraph (2), no deduction otherwise allowable shall be allowed under this chapter for any amount paid or incurred by a corporation in connection with the redemption of its stock.

**(2) Exceptions.**—Paragraph (1) shall not apply to—

**(A) Certain specific deductions.**—Any—

(i) deduction allowable under section

---

**1.** Bankers Trust acted as Kroy's investment banker, but did not loan funds to Kroy.

**2.** The loan agreements specified that Kroy would use the borrowed funds to repurchase its stock.

163 (relating to interest)

. . . . .

The government's principal argument in support of its position is that the plain meaning of the phrase "in connection with the redemption of its stock" includes the Loan Fees because Kroy incurred the Loan Fees in order to borrow the funds to finance its stock redemption.[3]

Kroy's position is that for federal tax purposes, two separate and independent transactions are involved, to wit: a stock redemption transaction (to which IRC § 162(k) applies) and a borrowing transaction (to which IRC § 162(k) does *not* apply). Kroy contends it did not incur the Loan Fees in connection with the repurchase of its stock, but as necessary compensation for the services rendered by its investment banker and lenders in order to borrow funds. Kroy argues that the "origin of the claim" test established by the Supreme Court in *United States v. Gilmore*, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963) applies, and the origin of Kroy's liability for the Loan Fees was the borrowing transaction and not its stock redemption transaction. Further, Kroy argues that the Supreme Court rejected the "primary purpose" test in *Woodward v. Commissioner*, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970) and, therefore, Kroy's business purpose in using the borrowed funds to redeem its stock is irrelevant for purposes of determining whether the Loan Fees are a deductible or capitalized expenditure.

The government's interpretation of IRC § 162(k) requires that the business purpose for the use of the borrowed funds be ascertained to determine deductibility. Under the Government's theory, if the business purpose for borrowing the funds is to redeem stock, then expenditures, such as the Loan Fees, are not deductible. However, if the funds are borrowed for some other business purpose, then the identical expenditures may be deductible. This is the uncertainty which the Supreme Court rejected in *Gilmore* and *Woodward.*

Therefore, we agree with Kroy. IRC § 162(k) and the "origin of the claim" test are consistent if the expenses which have their "origin" in a stock redemption transaction are nondeductible, and other expenses having origin in a separate, although related, transaction remain deductible as ordinary and necessary business expenses under IRC § 162(a). By contrast, the consequence of the government's position is that IRC § 162(k) overrules the "origin of the claim" test established by the Supreme Court several years before IRC § 162(k) was enacted. There is no support for this result.

The question in the *Gilmore* case was whether a husband's litigation expenses in his divorce proceedings were deductible as a business expense, rather than nondeductible as a personal expense, when they were attributable to protecting his income-producing stock. The Supreme Court established that the "controlling basic test of whether the expense was 'business' or 'personal' and, hence, whether it is deductible or not" is determined by "the origin and character of the claim with respect to which an expense

---

**3.** The government also makes two subsidiary arguments. First, the government suggests the phrase "otherwise allowable" in IRC § 162(k) should mean that, even if deductions are "otherwise allowable" in other contexts, such as deductions for the Loan Fees, they are not deductible when incurred in connection with a stock redemption. This argument begs the question because it is still necessary to decide in the first instance whether or not the expenditure was incurred "in connection with" a stock redemption before IRC § 162(k) applies.

Secondly, the government contends that because an exception is made under IRC § 162(k)(2)(A)(i) to allow the deduction of interest and no specific exception is made for the deduction of expenditures, such as, the Loan Fees, Congress must have intended to bar the deductibility of all such expenditures, except interest. Kroy points out that the government did not make this argument before either the Bankruptcy Court or the district court. The argument is unpersuasive. When IRC § 162(k) was enacted in 1986, expenditures, such as the Loan Fees, had been deductible for many years. Congress did not need to specifically include an "exception" for expenses which were deductible already, unless they were incurred in connection with the redemption of a corporation's stock. The interest exception has application when stock is redeemed for a promissory note. A corporation's payment of interest on such note issued to redeem its stock would not be deductible under IRC § 162(k) without the specific exception set forth in IRC § 162(k)(2)(A)(i).

was incurred, rather than its potential consequences upon the fortunes of the taxpayer ..." *Gilmore*, 372 U.S. at 490, 83 S.Ct. at 776. The Court found that the origin of Gilmore's expenses was in the divorce proceedings, and therefore the expenses were personal and nondeductible, even though they had been incurred for a business purpose.

In 1970, the Supreme Court applied the "origin of the claim" test to determine whether the expenses incurred by majority stockholders in acquiring stock owned by minority stockholders were deductible business, or nondeductible capital expenditures. *Woodward v. Commissioner*, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970); *United States v. Hilton Hotels Corp.*, 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970). Significantly, the Court specifically rejected the "primary purpose" test, *i.e.*, looking for the business purpose for which the expenditure was incurred, in favor of the "origin of the claim" test. The Court noted that the "primary purpose" test was "uncertain and difficult" and that any test relying on the purpose of the transaction "would encourage resort to formalism and artificial distinctions." *Woodward*, 397 U.S. at 577, 90 S.Ct. at 1306.

In 1986, Congress enacted IRC § 162(k) to codify and clarify existing law. An isolated case, *Five Star Mfg. Co. v. Commissioner*, 355 F.2d 724 (5th Cir.1966), had held that the funds paid to redeem stock in order to defeat an outside threat to the survival of the corporation were deductible as ordinary and necessary business expenses under IRC § 162(a). IRC § 162(k) explicitly provided that such costs were not deductible.

■ Kroy's case is an attempt by the government to extend IRC § 162(k) to costs incurred in borrowing funds where the loan proceeds are used to redeem stock. We hold that IRC § 162(k) does not apply to such expenditures. Therefore, we find the district court erred in concluding that for federal tax purposes the Loan Fees were incurred in connection with Kroy's redemption of its stock and, therefore, were nondeductible. We conclude the Loan Fees were incurred as compensation for services rendered to Kroy by its investment banker and lenders in a separate and independent borrowing transaction and, therefore, are deductible under IRC § 162(a).

The judgment of the district court is REVERSED.

REINHARDT, Circuit Judge, concurring specially:

This is a close question. I cannot say that the conclusion reached in Judge McLaughlin's opinion is incorrect. If Congress intended a different result, it will now have the opportunity to make its intentions clear.