131 T.C. No. 4

UNITED STATES TAX COURT

RALSTON PURINA COMPANY AND SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7357-00.                    Filed September 10, 2008.

        P, a Missouri corporation, claimed a deduction
under I.R.C. sec. 404(k) for payments made to its
employee stock ownership plan in redemption of P's
preferred stock owned by the plan, where the proceeds
of that payment were distributed to employees
terminating their participation in the plan.  R argues
that payments to redeem stock are not deductible under
either I.R.C. sec. 404(k)(1) or (5), or in the
alternative that deduction of these payments is barred
by the provisions of I.R.C. sec. 162(k).

        <u>Held</u>:  I.R.C. sec. 162(k) renders the payments
nondeductible because the payments are in connection
with a redemption of stock.  The result to the contrary
reached by the U.S. Court of Appeals for the Ninth
Circuit on almost identical facts in <u>Boise Cascade
Corp. v. United States</u>, 329 F.3d 751 (9th Cir. 2003),
respectfully will not be followed.

Kenneth A. Kleban, for petitioner.

Lawrence C. Letkewicz and Dana E. Hundrieser, for respondent.


OPINION


NIMS, Judge:  Before the Court are petitioner's and respondent's cross-motions for summary judgment pursuant to Rule 121.

Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the years in issue.

Rule 121(a) provides that either party may move for summary judgment upon all or any part of the legal issues in controversy. Full or partial summary judgment may be granted only if it is demonstrated that no genuine issue exists as to any material fact and that the legal issues presented by the motion may be decided as a matter of law.  See Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  As to the issues presented on these cross-motions for summary judgment, we conclude that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law.

The sole issue remaining for decision is whether petitioner may claim deductions for amounts paid in redemption of preferred stock held by its employee stock ownership plan (ESOP) for its 1994 and 1995 tax years. This issue was raised for the first time by petitioner in its second amendment to petition (second amendment). All other issues, of which there were many, have been settled. Respondent consented to the filing of the second amendment.

### Background

The parties filed an extensive stipulation of facts with accompanying exhibits which forms the factual setting for their respective arguments and which provides the basis for our Background discussion.

Petitioner is a Missouri corporation and had its principal place of business in St. Louis, Missouri, when its petition was filed. In 1989 petitioner amended its Savings Investment Plan (SIP or plan) for employees, adding an employee stock ownership plan (ESOP). Boatmen's Trust Co. (Boatmen's) was trustee of the ESOP portion of the SIP. Vanguard Fiduciary Trust Co. was named recordkeeper for the SIP and was responsible for making distributions to plan participants. The trust fund under the SIP was exempt from income tax under section 501(a). For convenience, references hereinafter to the SIP include, where appropriate, the trust fund under the SIP.

The managers of the SIP created a Benefits Policy Board (BPB) comprising employees appointed by petitioner's chief executive officer. They also created an Employee Benefit Asset Investment Committee (EBAIC), the members of which were appointed by petitioner's board of directors. Petitioner's board of directors, the BPB, the EBAIC, and the trustees were among the fiduciaries responsible for the administration of the SIP.

Boatmen's trust agreement provided that Boatmen's would make distributions from the SIP in cash or in kind to such person, in such amounts, at such times, and in such manner as directed by the EBAIC. The EBAIC could, at its sole discretion, direct Boatmen's to pay any cash dividends on shares of preferred stock (see below for definition) directly to plan participants. The EBAIC could also decide how any payments to plan participants would be funded. Petitioner could not use amounts in the SIP for any purpose other than the benefit of the SIP participants.

In connection with the creation of the ESOP, petitioner's board authorized the issuance of 4,600,000 shares of newly created convertible preferred stock (preferred stock). These shares could be issued only in the name of an ESOP trustee and were not readily tradable on an established market. Shares of the preferred stock were entitled to receive, when, as, and if declared by petitioner's board, cumulative cash dividends (stated

dividends) in an amount per share equal to $7.48 per annum, payable semiannually, one-half on June 29 and one-half on December 30 of each year commencing June 29, 1989.

On February 1, 1989, the SIP purchased 4,511,414 shares of preferred stock from petitioner at $110.83 per share. To finance this purchase, the SIP borrowed $500 million from institutional lenders. Petitioner guaranteed the ESOP loans. The loans matured in approximately 10 years with principal and interest payable semiannually.

The SIP purchased an additional 88,586 shares of preferred stock during the years 1990-92, also at $110.83 per share. The SIP funded these purchases through employee contributions.

Plan participants could make contributions to the ESOP up to 6 percent of their before-tax income. Any contributions in excess of 6 percent were invested outside the SIP in investment funds of the participant's choosing. Participants were not permitted to invest any after-tax income in the ESOP. Participants' basic matched contributions were fully vested at all times. Company matching contributions became vested over a period of 4 years. These matching contributions also included payments by petitioner to the ESOP preferred stock fund in amounts necessary to make ESOP loan amortization payments.

Employee participation in the SIP ended upon termination of employment for any reason. Terminated participants had the

option, among others, to cash out their investment in the ESOP. The SIP could, in its sole discretion, require petitioner to redeem shares of preferred stock at any time upon notice, when and to the extent necessary to provide required distributions to terminated participants electing to cash out their investments, or to make payments on the ESOP loan. The payment by the SIP to terminated participants could be made, at the SIP's option, in cash or shares of petitioner's common stock. The SIP also had the option to satisfy distributions to terminated participants without forcing petitioner to redeem stock.

At all relevant times the plan year of the SIP was the calendar year. For plan years 1989 through 1993 the SIP made distributions to terminated participants using cash otherwise available to it.

The first relevant redemption by petitioner of preferred stock held by the SIP occurred in August 1994. Petitioner redeemed 28,224 shares of preferred stock for $3,128,066. The SIP distributed that entire amount to terminated participants by December 31, 1994. During this period the SIP also made $1,589,696 in distributions to terminated participants out of cash otherwise available.

In February 1995 petitioner redeemed another 56,645 shares of preferred stock from the SIP for $6,277,965. All of the proceeds were distributed to terminating participants from

February 21 through July 20, 1995. During this period the SIP made additional distributions of $1,927,624 from cash otherwise available.

Petitioner timely filed consolidated Forms 1120, United States Corporation Income Tax Return, for its taxable years ending September 30, 1994 and 1995. Respondent issued a statutory notice of deficiency to petitioner dated April 6, 2000, pertaining to petitioner's 1993, 1994, and 1995 tax years. Petitioner filed a petition contesting many of the adjustments respondent made in the notice of deficiency, none of which concerned petitioner's ESOP. Petitioner filed an amendment to petition on February 24, 2003, and the second amendment on December 9, 2003. In the second amendment petitioner asserted for the first time that it was entitled to an additional deduction, under section 404(k), for amounts it paid to the SIP to redeem its preferred stock that were then distributed to plan participants.

## Discussion

Petitioner claims as deductions its payments in redemption of preferred stock held by the SIP the proceeds of which the SIP subsequently distributed to terminating employees. Petitioner contends these payments are essentially equivalent to dividends within the meaning of section 302(b)(1) (redemption dividends). Respondent does not challenge this contention--rather that the

redemption dividends are deductible.  The SIP used the redemption dividends to make distributions to the employee participants in the SIP who had terminated their participation because of retirement or for some other reason.

Petitioner asserts that the redemption dividends qualify as applicable dividends under section 404(k)(2).  For the taxable years at issue, section 404(k) provided in relevant part:

> SEC. 404(k).  Deduction for Dividends Paid on Certain Employer Securities.--
>
> (1) General rule.--In the case of a corporation, there shall be allowed as a deduction for a taxable year the amount of any applicable dividend paid in cash by such corporation during the taxable year with respect to applicable employer securities.  Such deduction shall be in addition to the deductions allowed under subsection (a).
>
> (2) Applicable dividend.--For purposes of this subsection--
>
> (A) In general.--The term "applicable dividend" means any dividend which, in accordance with the plan provisions--
>
> (i) is paid in cash to the participants in the plan or their beneficiaries,
>
> (ii) is paid to the plan and is distributed in cash to participants in the plan or their beneficiaries not later than 90 days after the close of the plan year in which paid, or
>
> (iii) is used to make payments on a loan described

in subsection (a)(9) the proceeds of which were used to acquire the employer securities (whether or not allocated to participants) with respect to which the dividend is paid.

\* \* \* \* \* \* \*

(3) Applicable employer securities.--For purposes of this subsection, the term "applicable employer securities" means, with respect to any dividend, employer securities which are held on the record date for such dividend by an employee stock ownership plan which is maintained by--

(A) the corporation paying such dividend, or

\* \* \* \* \* \* \*

(4) Time for deduction.--

(A) In general.--The deduction under paragraph (1) shall be allowable in the taxable year of the corporation in which the dividend is paid or distributed to a participant or his beneficiary.

(B) Repayment of loans.--In the case of an applicable dividend described in clause (iii) of paragraph (2)(A), the deduction under paragraph (1) shall be allowable in the taxable year of the corporation in which such dividend is used to repay the loan described in such clause.

(5) Other rules.--For purposes of this subsection--

(A) Disallowance of deduction.--The Secretary may disallow the deduction under

paragraph (1) for any dividend if the Secretary determines that such dividend constitutes, in substance, an evasion of taxation.

* * * * * * *

(6) Definitions.--For purposes of this subsection--

(A) Employer securities.--The term "employer securities" has the meaning given such term by section 409(l).

(B) Employee stock ownership plan.--The term "employee stock ownership plan" has the meaning given such term by section 4975(e)(7).  Such term includes a tax credit employee stock ownership plan (as defined in section 409).

Respondent does not challenge the treatment of the preferred stock as "employer securities" as defined in section 409(l).

Petitioner raised this section 404(k) issue for the first time in the second amendment, which, as stated above, petitioner filed without objection by respondent, after the decision of the U.S. Court of Appeals for the Ninth Circuit in Boise Cascade Corp. v. United States, 329 F.3d 751 (9th Cir. 2003), on May 20, 2003.  In that case the Court of Appeals decided an ESOP preferred stock redemption issue almost identical to the issue for decision in this case.  The Boise Cascade Corp. result is not controlling in this case, in which any appeal would normally lie

to the Court of Appeals for the Eighth Circuit.  See <u>Golsen v. Commissioner</u>, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

Respondent maintains that the issue was incorrectly decided by the Court of Appeals for the Ninth Circuit and challenges the claimed deductions on three grounds:  (1) The redemption dividends are not applicable dividends within the meaning of section 404(k); but (2) even if the redemption dividends otherwise constitute applicable dividends as defined by section 404(k), their deduction should be disallowed as evasions of taxation under section 404(k)(5); and (3) even if the redemption dividends are otherwise allowable as deductions under section 404(k), they are disallowed as amounts paid by a corporation in connection with the redemption of its stock within the meaning of section 162(k).

In reaching our decision we need not traverse petitioner's convoluted arguments in support of its position that the redemption dividends qualify as applicable dividends under section 404(k)(2), or respondent's arguments regarding section 404(k)(5), because in our view section 162(k) precludes that result in any event, notwithstanding the contrary position taken by the Court of Appeals.

Section 162(k) provides:[1]

    SEC. 162(k). Stock Redemption Expenses.--

        (1) In general.--Except as provided in paragraph (2), no deduction otherwise allowable shall be allowed under this chapter for any amount paid or incurred by a corporation in connection with the redemption of its stock.

        (2) Exceptions.--Paragraph (1) shall not apply to--

            (A) Certain specific deductions.--Any--

                (i) deduction allowable under section 163 (relating to interest), or

                (ii) deduction for dividends paid (within the meaning of section 561).

            (B) Stock of certain regulated investment companies.--Any amount paid or incurred in connection with the redemption of any stock in a regulated investment company which issues only stock which is redeemable upon the demand of the shareholder.

---

[1] The Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1704(p), 110 Stat. 1886, amended sec. 162(k)(1) by striking "the redemption of its stock" and inserting "the reacquisition of its stock" effective for amounts paid or incurred after Sept. 13, 1995, in tax years ending after that date. The net effect of the amendment was simply to broaden the scope of sec. 162(k)(l) beyond the technical boundaries of "redemption". This amendment does not apply to petitioner's redemptions, for while petitioner's 1995 fiscal year ended on Sept. 30, 1995, all of the redemption and distribution transactions occurred before Sept. 13, 1995.

The redemption dividends do not fall within the exceptions provided in section 162(k).

Petitioner seeks to have us adopt the position taken by the Court of Appeals that, as discussed below, the distribution payments from the ESOP were not "in connection with" the redemption payments made by petitioner and as a result the entire transaction did not run afoul of section 162(k).

The Court of Appeals' rationale runs along the following lines. The parties stipulated that for purposes of section 302(b), if the ESOP is treated as the owner of the redeemed preferred stock, then the redemptions did not result in a meaningful reduction in the ESOP's proportionate interest in petitioner and thus would qualify for dividend treatment under section 316. The Court of Appeals concluded that the ESOP was the owner of the stock; this established the status of the stock redemption payments as dividends. The court then had to determine whether this dividend ran afoul of section 162(k).

Section 162(k) itself is an exception to the general rule of section 162(a) that permits a deduction for all "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". It prohibits deductions for expenses that would ordinarily be deductible business expenses but for the fact that those expenses were made in connection with a repurchase of stock. In the words of the court in Boise

Cascade Corp. v. United States, supra at 756: "Section 162(k) prohibits deductions claimed as a consequence of a stock redemption. Thus, it acts as a disallowance provision for otherwise allowable non-capital deductions incurred in connection with a stock redemption transaction." Boise Cascade Corp. goes on to say that "the key question is whether distributions to the [ESOP] Participants were payments made 'in connection with' the redemption of the convertible preferred stock." Id. at 757.

In a nutshell, Boise Cascade Corp. appears to proceed on the premise that if distribution payments to the withdrawing ESOP participants are made "in connection with" redemption of stock, then section 162(k) disallows a deduction for the amounts paid. The Court of Appeals then held that the payments were not made in connection with the redemption of its stock. Id. at 757-758.

The Court of Appeals' holding relied heavily on its previous decision in United States v. Kroy (Europe) Ltd., 27 F.3d 367 (9th Cir. 1994), regarding the meaning of the phrase "in connection with" in section 162(k). In Kroy, the Court of Appeals interpreted the phrase narrowly to hold that expenses incurred to borrow funds used to effect a redemption were not in connection with a redemption. The court reasoned that Congress, in enacting section 162(k), did not intend to overrule the "origin of the claim" test for determining whether expenses were deductible under section 162 generally. Id. at 369-370.

Therefore, the court interpreted the phrase "in connection with" to include only expenses that have their origin in a stock redemption transaction, excluding expenses that have their origin in a "separate, although related, transaction". Id. at 369.

We specifically rejected the Court of Appeals' narrow interpretation of the phrase "in connection with" in United States v. Kroy (Europe) Ltd., supra. See Fort Howard Corp. & Subs. v. Commissioner, 103 T.C. 345 (1994). In Fort Howard, we noted that Congress had expressly intended the phrase to be construed broadly, to include all deductions necessary or incident to a redemption transaction. Id. at 353-354 (citing S. Rept. 99-313, at 223 (1986), 1986-3 C.B. (Vol. 3) 1, 223). We also relied heavily on the opinion of the Court of Appeals for the Eighth Circuit in Huntsman v. Commissioner, 905 F.2d 1182 (8th Cir. 1990), revg. 91 T.C. 917 (1988), which held that the phrase "in connection with" should be broadly construed. We concluded that the origin of the claim test had no bearing on the section 162(k) inquiry, rejecting Kroy's assumption that the "in connection with" test under section 162(k) must be fashioned in such a way as to be consistent with the origin of the claim test. We also concluded that Congress could not have intended section 162(k) as a mere clarification of existing law, because section 162(k) prohibits deductions that are "otherwise allowable" under present law. Fort Howard Corp. & Subs. v. Commissioner, supra at

356. Two years after our Opinion in <u>Fort Howard</u>, Congress enacted retroactive relief for the borrowing expenses involved in both <u>Fort Howard</u> and <u>Kroy</u>. See <u>Fort Howard Corp. & Subs. v. Commissioner</u>, 107 T.C. 187 (1996). Ultimately, our holding in this case does not depend on our interpretation of the phrase "in connection with" because we conclude that Congress expressly intended section 162(k) to prohibit deduction of the funds used to effect a redemption. See <u>infra</u> pp. 21-22.

Petitioner urges us to adopt the Court of Appeals for the Ninth Circuit's reasoning, arguing that while the transaction as a whole qualifies for a deduction under section 404(k), the distribution payments from the SIP to terminating employees are not connected with petitioner's redemption of its preferred stock and thus do not run afoul of section 162(k).

We note at the outset that this line of argument appears to be facially inconsistent. Petitioner first argues that the redemption payments from petitioner to the SIP and the distribution payments from the SIP to the employees are linked in an integrated transaction, so that the transaction fits within one of the transactions permissible under section 404(k)--a dividend payment from a corporation to a plan and a distribution of those proceeds to departing employees. Petitioner then argues that these payments are in fact not connected for purposes of section 162(k). Petitioner seems to want it both ways; it relies

on the integrated form of the transaction to justify a section
404(k) deduction only to deny that form in another context.  See
Portland Golf Club v. Commissioner, 497 U.S. 154, 168 (1990)
(noting an "inherent contradiction" where taxpayer relied on two
methods of calculation to simultaneously show actual losses and
an intent to profit).

While this contradiction tends to undercut petitioner's
argument, there is a more serious flaw in petitioner's argument:
both petitioner and the Court of Appeals for the Ninth Circuit
have framed the section 162(k) issue incorrectly.  The Court of
Appeals in Boise Cascade Corp. v. United States, 329 F.3d 751
(9th Cir. 2003), held, and petitioner asserts, that the proper
question for section 162(k) purposes is whether the distribution
payment is "in connection with" a redemption.  The court offers
no rationale for framing the issue as it does.  We infer, as
petitioner does, that the court believed that the distribution
payment from the SIP to the departing employees was the payment
for which the taxpayer sought a deduction.  This belief is
incorrect, as it misunderstands the nature of the deduction
sought under section 404(k).

Section 162(k) bars the deduction of "otherwise allowable"
deductions that are made in connection with a repurchase of
stock.  The deduction sought is the section 404(k) deduction.
Section 404(k)(1) provides that a corporation is entitled to a

deduction for "any applicable dividend" that it pays with respect to applicable employer securities.  (We shall assume, arguendo, that deductions for the payments petitioner made here would normally be allowable under section 404(k).)  A deduction under section 404(k) is not allowable unless the transaction qualifies as an applicable dividend.  Thus, the proper question for section 162(k) purposes is whether the otherwise deductible applicable dividends that petitioner paid are "in connection with" a repurchase of stock.  To answer this question, we must identify the transaction that constitutes the applicable dividend.

As for what payment in this case could constitute an applicable dividend under section 404(k), there are three possibilities:  (1) The redemption payment from petitioner to the SIP, (2) the distribution payments from the SIP to departing employees, or (3) the redemption payment to the SIP and the distribution from the SIP as an integrated transaction.  The court in Boise Cascade Corp. v. United States, supra, without analysis of section 404(k), determined that the second option was correct--that the distribution payment from the plan to the departing employees was the deductible applicable dividend to be analyzed under section 162(k).  Id. at 754 ("if the distributions to the employees were a distribution under § 301, then they were a 'dividend' for the purposes of § 316 and the deduction provided for in § 404(k) applies").  For the reasons discussed below, that

position is unsupportable under section 404(k).  Rather, it is both the redemption payment and the distribution of that payment, as an integrated transaction, that constitutes the applicable dividend under section 404(k).

Under section 404(k)(1), a corporation is entitled to a deduction for applicable dividends that the corporation pays-- either to an ESOP or to plan participants directly.  Payments made to an ESOP must then be distributed by the ESOP, either to plan participants or to pay off ESOP debt.  Sec. 404(k)(2).  An applicable dividend, as applied here, is "any dividend which * * * is paid to the plan and is distributed in cash to participants in the plan or their beneficiaries not later than 90 days after the close of the plan year".   Sec. 404(k)(2)(A).  Thus, the applicable dividend as defined requires both a payment from a corporation and a distribution of that payment to departing employees.

Petitioner made payments in redemption of the preferred stock held by the SIP.  The redemption payments were made by petitioner (the corporation) to the SIP (the plan).  The SIP properly distributed those payments.  The redemption payments fit the technical definition of a dividend for purposes of sections 301 and 316, because the redemptions did not result in a meaningful reduction in the ESOP's proportionate interest in

petitioner. See sec. 302(b). However, they would not have been applicable dividends unless the SIP later distributed those payments in the prescribed manner.

Distribution payments from the SIP to terminating employees, standing alone, do not fit the definition of applicable dividends for two reasons. First, an applicable dividend must be paid by the corporation, and the SIP is not the corporation--petitioner is. Second, the distributions from the SIP are not dividends at all, because a dividend is defined as a payment by a corporation to its shareholders. Sec. 316(a). The SIP is the owner of the preferred stock; it cannot be the payor of dividends under section 316. These distribution payments represent only the distribution of the proceeds of a dividend paid by petitioner to the SIP. Thus, a distribution payment alone cannot be an applicable dividend as that term is defined under section 404(k). Rather, both sides of these redemption transactions--redemption and distribution--are necessary for the transactions to fit the definition of applicable dividends found in section 404(k).

Petitioner argues that the SIP distribution alone must be the deductible applicable dividend because that distribution determines the timing and the amount of the deduction, as the SIP can choose the amount of petitioner's payment that it distributes to employees and when it distributes that payment. As stated above, no payment from petitioner to the SIP would be deductible

under section 404(k) without subsequent distribution--either to terminating participants or to pay off SIP debt. See sec. 404(k)(2)(A)(ii) and (iii). However, the reverse is true as well: without a payment from petitioner to the SIP, no distribution from the SIP would be deductible, because section 404(k)(1) requires that the "applicable dividend" be paid "by such corporation." For that reason, petitioner cannot claim a deduction for the distributions the SIP made to employees out of cash otherwise available.

Similarly, the court in Boise Cascade Corp. v. United States, 329 F.3d at 757-758, was incorrect when it framed the section 162(k) test as being whether the distribution payment from the plan was "in connection with" a redemption, because the distribution, standing alone, is not deductible under section 404(k), and without an allowable deduction a section 162(k) analysis is not necessary. The "connection" that must be made is between the redemption payment and the distribution payment as required by section 404(k). The payment from petitioner to the SIP to the departing employees is a statutorily integrated transaction. The two sides of the transaction are necessarily connected, because the SIP must distribute the same funds paid to it by petitioner. Once that connection is established, deduction under section 404(k) is possible. That entire transaction, now potentially deductible as an applicable dividend under section

404(k), must also pass muster under section 162(k). The test is whether the "otherwise allowable" deduction for the payment of an applicable dividend is nevertheless disallowed because the payment is "in connection with" a repurchase of stock.

Petitioner's payments of these asserted applicable dividends were certainly in connection with a repurchase of stock. The first part of the applicable dividend transaction was the redemption. The funds of the transaction, passed from petitioner to the SIP to the departing employees, are the same funds used to repurchase stock. Section 162(k) bars a deduction for the payment of funds used to repurchase stock. See S. Rept. 99-313, at 223 (1986), 1986-3 C.B. (Vol. 3) 1, 223 ("The committee intends that amounts subject to this provision will include amounts paid to repurchase stock"). Therefore, the first part of the integrated transaction--the redemption of stock from the SIP--ensures that section 162(k) bars the deduction of any portion of the transaction.

As a result, we hold that section 162(k) prevents petitioner from claiming as deductions the amounts it paid to repurchase its own stock from its ESOP which were then distributed to terminating employees. For the reasons given, we respectfully decline to follow the contrary result reached on almost identical

facts by the U.S. Court of Appeals for the Ninth Circuit in <u>Boise Cascade Corp. v. United States</u>, 329 F.3d 751 (9th Cir. 2003).[2]

Therefore, we shall grant respondent's motion for summary judgment and deny petitioner's motion for summary judgment. In doing so, we have considered all of the parties' arguments, and to the extent not discussed, we find them moot. In accordance with the foregoing,

<u>An appropriate order will</u>

<u>be issued, and decision will be</u>

<u>entered under Rule 155</u>.

Reviewed by the Court.

COLVIN, COHEN, SWIFT, WELLS, HALPERN, VASQUEZ, GALE, THORNTON, MARVEL, HAINES, WHERRY, and HOLMES, <u>JJ</u>., agree with this majority opinion.

GOEKE and KROUPA, <u>JJ</u>., did not participate in the consideration of this opinion.

---

[2] We note that the decision of the District Court in <u>Conopco, Inc. v. United States</u>, 100 AFTR 2d 5296, 2007-2 USTC par. 50,582 (D.N.J. 2007), is to a similar effect, in that it disagrees with the holding in <u>Boise Cascade</u>. Contra <u>General Mills, Inc. v. United States</u>, 101 AFTR 2d 550, 2008-1 USTC par. 50,141 (D. Minn. 2008).

SWIFT, J., concurring:  Regardless of whether petitioner's redemption dividends should be disallowed under section 162(k)(1), respondent argues in the alternative that the redemption dividends should be disallowed pursuant to his determination under section 404(k)(5)(A).  Thereunder, Congress provided that "The Secretary may disallow the deduction under * * * [section 404(k)(1)] for any dividend if the Secretary determines that such dividend constitutes, in substance, an evasion of taxation."

In the light of case authority that redemption dividends should not be disallowed under section 162(k)(1),[1] I believe this Court should address respondent's alternative argument under section 404(k)(5)(A).

It is most unusual in a particular Code section to have an express and specific delegation to the Secretary of authority to disallow on the grounds of tax evasion the very deduction provided in the section.  On its face and given its placement in

_____

[1] Although one court has upheld the Commissioner's disallowance under sec. 162(k)(1) of deductions for redemption dividends, see Conopco, Inc. v. United States, 100 AFTR 2d 5296, 2007-2 USTC par. 50,582 (D.N.J. 2007) (unpublished opinion, see 8th Cir. R. 32.1A), three courts have rejected sec. 162(k)(1) as a basis for disallowing deductions for redemption dividends, see, e.g., Boise Cascade Corp. v. United States, 329 F.3d 751 (9th Cir. 2003), affg. 82 AFTR 2d 7249 (D. Idaho 1998); General Mills, Inc. v. United States, 101 AFTR 2d 550, 2008-1 USTC par. 50,141 (D. Minn. 2008).  General Mills and Conopco are pending appeal to the United States Courts of Appeals for the Third and the Eighth Circuits, respectively.

section 404(k), section 404(k)(5)(A) appears to give the Secretary authority to do just that.

In section 7805(a) Congress has delegated to the Secretary general authority to promulgate interpretative rules and regulations, and in a number of Code sections Congress has delegated to the Secretary additional authority to promulgate regulations under the specific sections. The jurisprudence relating to the deference to be given such regulations is well known. See, e.g., Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984); Swallows Holding, Ltd. v. Commissioner, 515 F.3d 162 (3d Cir. 2008), vacating 126 T.C. 96 (2006).

The delegation Congress made to the Secretary in section 404(k)(5)(A), however, is particularly specific and broad and is not limited to the promulgation of regulations. In section 404(k)(5)(A) Congress appears to have delegated to the Secretary authority to place a "tax evasion" label on a particular transaction or type of transaction by regulation, by ruling, or by other public or private notice. No particular requirement or limitation is set forth in section 404(k)(5)(A) as to how the Secretary is to make the "tax evasion" determination, as to how specific and detailed the Secretary's public explanation thereof need be, or as to how the Secretary is to make the "tax evasion" announcement.

For a number of years now and on a number of occasions, under authority of section 404(k)(5)(A) a "tax evasion" label has been placed by the Commissioner and/or by the Government on redemption dividends and claimed deductions under section 404(k)(1) relating thereto have been disallowed:  First, in the litigation of <u>Boise Cascade Corp. v. United States</u>, 329 F.3d 751 (9th Cir. 2003); second, by issuance of Rev. Rul. 2001-6, 2001-1 C.B. 491; third, in the litigation of <u>Conopco, Inc. v. United States</u>, 100 AFTR 2d 5296, 2007-2 USTC par. 50,582 (D.N.J. 2007); fourth, in the litigation of <u>General Mills, Inc. v. United States</u>, 101 AFTR 2d 550, 2008-1 USTC par. 50,141 (D. Minn. 2008); fifth, in the instant litigation; and sixth, in final regulations promulgated in 2006 under sections 162(k) and 404(k), see secs. 1.162(k)-1(a), 1.404(k)-3, Income Tax Regs.

Under section 404(k)(5)(A) in 2001 the Commissioner issued Rev. Rul. 2001-6, <u>supra</u>.[2]  Certainly, the Office of Chief Counsel advised the Commissioner and was the primary drafter of Rev. Rul. 2001-6, <u>supra</u>.  The revenue ruling, however, clearly was issued by the Commissioner as are all revenue rulings to whom the Secretary has delegated such authority as reflected in Treas. Dept. Order 150-10 (April 22, 1982).  See sec. 7803(a).

---

[2]  Sec. 7701(a)(11)(B) defines "Secretary" as "the Secretary of the Treasury or his delegate."

Letter rulings and technical advice memoranda are issued by the Commissioner's Office of Chief Counsel.  That office, however, only drafts and proposes revenue rulings and revenue procedures.  See IRS Deleg. Order 190 (Rev. 4, Oct. 8, 1996), Internal Revenue Manual (IRM), pt. 1.2.53.5, (Oct. 8, 1996); Gen. Counsel Order 4 (Jan. 19, 2001), IRM pt. 30.2, Exhibit 30.2.2-6 (Aug. 11, 2004); see also sec. 7803(b)(2)(B).

Rev. Rul. 2001-6, supra, was approved and issued by the Assistant to the Commissioner, acting on the Commissioner's behalf, and was published in the Internal Revenue Bulletin, 2001-6 I.R.B. 491, the authoritative publication of the Commissioner for announcement of official rulings pertaining to internal revenue matters.  See sec. 601.601(d)(1), Statement of Procedural Rules ("The Internal Revenue Bulletin is the authoritative instrument of the Commissioner for the announcement of official rulings, decisions, opinions, and procedures, and for the publication of Treasury decisions, Executive orders, tax conventions, legislation, court decisions, and other items pertaining to internal revenue matters."); see also id. sec. 601.601(d)(2)(ii)(a), (vii)(a) and (b).

Also in 2001 Congress addressed the section 404(k)(5)(A) and by amendment clarified the Secretary's authority thereunder by adding the word "avoidance".  Economic Growth and Tax Relief

Reconciliation Act of 2001, Pub. L. 107-16, sec. 662(b), 115 Stat. 142.

I would note that the Commissioner's disallowance of deductions under section 404(k)(1), based on the discretion given to him in section 404(k)(5)(A), need not involve an analysis and findings of "badges of fraud" typically associated with prosecutions under section 7201 of affirmative attempts by taxpayers to engage in willful tax evasion and with determinations of willful civil tax fraud penalties under section 6663. See, e.g., Spies v. United States, 317 U.S. 492, 499 (1943).

Indeed, in this case petitioner filed its corporate Federal income tax returns for 1994 and 1995 without claiming deductions for redemption dividends. At this time no underpayments of tax are associated with the claimed section 404(k)(1) deductions. Not until December 9, 2003 (2 years after Rev. Rul. 2001-6, supra, was issued), did petitioner file (via its second amendment to petition herein) claims for refund for 1994 and 1995, asking respondent and this Court to consider the deductibility of petitioner's redemption dividends and if allowed to refund overpayments of taxes paid. There are no "badges of fraud" to be found here, and respondent does not contend otherwise. Rather, respondent simply contends that allowance of petitioner's claimed redemption dividend deductions would be improper and would give

rise to underpayments of Federal income taxes which the Commissioner, exercising his discretion under section 404(k)(5)(A), has described as tax evasion.

The tax "evasion" or "avoidance" label placed by the Commissioner on redemption dividends under the authority of section 404(k)(5)(A) is somewhat analogous to the tax "evasion" or "avoidance" label that the Commissioner occasionally places on transactions under the authority given to him in other Code sections. For example, in section 269 the Commissioner is given substantial discretionary authority to label a transaction as engaged in for the principal purpose of tax evasion or avoidance and to disallow related deductions. The tax "evasion" or "avoidance" which the Commissioner typically identifies under section 269 refers to the underlying nature and purpose of the transaction, not to what we typically consider "badges of fraud", such as a taxpayer's double set of books, destruction of evidence, or omitted income. The tax evasion or avoidance typically involved under section 269 may be described simply as involving a transaction in which a taxpayer is attempting to secure a tax benefit which it "would not otherwise enjoy" and which the Commissioner, in his discretion, has identified as

having a principal tax evasion purpose.  See <u>Southland Corp. v. Campbell</u>, 358 F.2d 333, 336 (5th Cir. 1966).[3]

Here respondent has labeled redemption dividends as transactions that inherently provide to a corporate ESOP sponsor tax deductions to which it is not entitled.  In Rev. Rul. 2001-6, <u>supra</u>, it is explained that the allowance of deductions for redemption dividends would give corporate ESOP sponsors deductions for payments that do not represent true economic costs and that redemption dividends vitiate important rights and protections for recipients of ESOP distributions.

In spite of the brevity of the explanation provided in Rev. Rul. 2001-6, <u>supra</u>, I believe that in the light of section 404(k)(5)(A) the tax evasion label that has been placed on redemption dividends by the Commissioner is entitled to substantial deference.  See <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984).  While notice-and-comment rulemaking generally assures <u>Chevron</u> deference for regulations, the absence of such formality in the issuance of rulings does not preclude such deference where Congress intended to grant the agency the power to make rules with the "force of law" and "the agency interpretation claiming deference was

---

[3] I emphasize that the sec. 404(k)(5)(A) authority to disallow a claimed sec. 404(k)(1) deduction because it would constitute a tax evasion transaction is even more specific than the authority set forth in sec. 269.

promulgated in the exercise of that authority." United States v. Mead Corp., 533 U.S. 218, 226-227 (2001); see Barnhart v. Walton, 535 U.S. 212, 221-222 (2002).

Lastly, as stated, in 2006 the Secretary promulgated final regulations reflecting the position set forth in Rev. Rul. 2001-6, supra. See sec. 1.162(k)-1, Income Tax Regs.; sec. 1.404(k)-3, Q&A-1, Income Tax Regs. ("Payments to reacquire stock held by an ESOP * * * used to make benefit distributions to participants" are not allowed under section 404(k)(2) and (5)). Although the regulations apply only prospectively and only to amounts paid or incurred after August 30, 2006, secs. 1.162(k)-1(c), 1.404(k)-3, Q&A-2, Income Tax Regs., the regulations are relevant as they are consistent with Rev. Rul. 2001-6, supra, see Smiley v. Citibank (S.D.), N.A., 517 U.S. 735, 744 n.3 (1996) ("Where * * * a court is addressing transactions that occurred at a time when there was no clear agency guidance, it would be absurd to ignore the agency's current authoritative pronouncement of what the statute means.").

For the reasons stated, I would address respondent's alternative argument and conclude that respondent's determination--that the claimed deductions for redemption dividends, if allowed, would constitute impermissible tax evasion--should be sustained.